[Crim. No. 11200.    Second Dist., Div. Four.    Jan. 26, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD TOVAR, Defendant and Appellant.

Elinor Chandler Duncan for Defendant and Appellant.

Thomas C. Lynch, Attorney General, and Raymond Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged, in two counts, with possession of marijuana (Health & Saf. Code, § 11530), and sale of marijuana (Health & Saf. Code, § 11531). A motion to dismiss, under section 995 of the Penal Code was made and denied. Defendant pled not guilty and, after a trial to the court (jury trial having been duly waived) he was found guilty; a motion for new trial was made and denied; probation was denied; and defendant was ordered committed to the Youth Authority. He has appealed.

The police were engaged in investigating sales of narcotics at and near Belmont High School, in the City of Los Angeles. They had arranged with the vice principal of the school, Mr. Condit, that Officer Tawes would act as an undercover operative, seeking to identify peddlers; that Officer Tawes would give to Mr. Condit any information thus secured and that Mr. Condit would relay that information to Sergeant Zappey. During the course of this investigation, Officer Tawes had several transactions with a student named Darrell Mitchell, in the course of which Mitchell sold Tawes marijuana cigarettes, and, in conversations, told the officer that his source of supply was a fat Mexican named Tovar,

who employed Mitchell to sell marijuana to students for a commission.

On the morning of November 17, 1964, Mitchell approached Tawes with an offer to sell more marijuana. Tawes arranged to meet Mitchell and make the purchase after school that afternoon. Tawes notified Condit of this arrangement and Condit passed the information along to Sergeant Zappey. On orders from the latter, other officers came to the school and arrested Mitchell, who was found to be in possession of a quantity of marijuana. Under interrogation,[1] Mitchell told the officers that he had obtained the marijuana from Tovar, pointed out the place where Mitchell believed Tovar lived, and told them that Tovar usually caught a morning bus at the intersection of Beverly Boulevard and Park View. At 7:45 a.m. the next morning the officers arrested Tovar at this intersection, took him to the police station, where a search of his person disclosed him to be in possession of a plastic sack containing marijuana cigarettes.

Defendant contends that his conviction was based on evidence illegally obtained, urging that both the arrest of Mitchell and that of Tovar were made without reasonable cause.

I

The arrest of Mitchell was entirely lawful. The arresting officers acted on information received by them from fellow officers, the foundation of which was the personal information of Officer Tawes as to his prior dealings with Mitchell and Mitchell's statements made to the officer on the morning of the arrest. Defendant contends that the official chain was broken because the data from Officer Tawes passed through Mr. Condit on its way to Sergeant Zappey. But Mr. Condit was a known and reliable person, holding an official status of respect and responsibility. The reasonableness of Mitchell's arrest and the propriety of using information thereby secured is obvious.

II

But the arrest of Tovar stands on a different basis. The only information tending to connect Tovar with the sales at Belmont was the information given the officers by Mitchell—an informant whose reliability was untested and who had given that information under circumstances not overly

---

[1] It is not here questioned that Mitchell was properly warned of his constitutional rights after his arrest and before the interrogation of him began.

conducive to credibility. The Attorney General argues that the officers had other, and independent, information that Tovar was engaged in the narcotic traffic. However, under examination, the officers involved could point to only one specific basis for such suspicion—a juvenile court petition filed and thereafter dismissed. Otherwise, the officers had only "conversations" with other officers who had said that "Tovar was involved in narcotics." We do not regard this as aiding in the search for probable cause. No officer, anywhere along the unidentified chain of communication, was said to have known, of his own knowledge, that Tovar had been discovered in any involvement with narcotics, except for one instance referred to. No record of conviction was shown, no arrest records were produced, and we are left with a mere suspicion, by officers not identified in this record, based as far as we are told[2] on pure hearsay from unofficial and untested sources.

It is true that information from a nonreliable source may be buttressed by an accumulation of other independent data; and that reliability may be shown by the fact that information from the nonreliable source has been verified by independent investigation. But, in addition to Mitchell's own identification of Tovar as his source of supply, Mitchell had told only that he *thought* Tovar lived at a certain address—a fact not verified—and that he usually took a bus at a certain intersection. Only the latter bit of data was verified. We do not feel that this single bit of data, as to conduct not prima facie incriminating, was enough to cause a reasonable man to regard Mitchell's self-serving statements as tested to a point justifying a warrantless arrest and search.

The case before us bears a striking similarity to the situation in *People* v. *Amos* (1960) 181 Cal.App.2d 506 [5 Cal. Rptr. 451]. There, as here, the police arrested an alleged supplier of narcotics on the basis of information given to them by an addict, under arrest, but not shown to be a "reliable" informant. There, as here, it was claimed that the informant's credibility was shown by the fact that defendant

---

[2]Since the arrests were without a warrant, the burden was on the People to show the existence of reasonable cause (*People* v. *Haven* (1963) 59 Cal.2d 713, 717 [31 Cal.Rptr. 47, 381 P.2d 927]); we must decide the case on the record made in the court below. We recognize the possibility that the official suspicions of Tovar may have been, in fact, based on more reliable data than was here presented; if this is so, the People will have an opportunity, if the case is retried, to supplement their proof.

was discovered leaving the premises where the informant had said he would be. The court said (at p. 508): "Information such as here provided simply serves to point the finger of suspicion at a particular person and ordinarily results in surveillance or investigation of the suspect. If the investigation or observation of the suspect tends to confirm the report of the informant whose reliability has not been established a lawful search or arrest may be made provided the combined information gives reasonable cause therefor. [Citation.] But in the instant case the officers observed no act or conduct on the part of the defendant that tended to indicate he was violating the law."

### III

It is true that Mitchell's testimony against defendant, given in court, was, by itself, if believed by the trial court, sufficient to sustain a conviction of sale (either by defendant to Mitchell, or by defendant to Tawes through Mitchell as defendant's agent), or of possession incident to such a sale. But Mitchell's testimony supports only a finding of possession in connection with the sales in which Mitchell was involved; only the unlawful search of Tovar, after his unlawful arrest, provided evidence of a possession on the morning of November 18th, as charged in Count I. And we cannot say that, without the partial verification of Mitchell's story which Tovar's arrest and the subsequent search provided, a finding of guilt of either possession or of sale on the earlier occasions would have been made. It follows that the conviction on both counts must be reversed.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.