[Crim. No. 14875.    Second Dist., Div. Four.    Apr. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. NAZARIO SOTO LOPEZ, Defendant and Appellant.

Daniel L. Dintzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

FILES, P. J.—After a jury trial, defendant was convicted of the following offenses: count I, offering to furnish marijuana to a minor on August 22, 1967 (Health & Saf. Code, § 11532); count II, furnishing marijuana to a minor on August 23, 1967 (Health & Saf. Code, § 11532); count III, possession of marijuana on August 23, 1967 (Health & Saf. Code, § 11530); counts IV and V, assaults on two peace officers in the performance of their duties with force likely to produce great bodily harm (Pen. Code, § 245, subd. (b)). The information also alleged five prior felony convictions. The first two priors were stricken on motion of the district attorney. Defendant admitted the other three (out of the presence of the jury) but, subsequent to the trial, the fifth prior was stricken by the court in the interest of justice. Probation was denied and defendant was sentenced to state prison for the term prescribed by law on counts II, IV and V, the sentences to run concurrently. Imposition of judgment as to counts I and III was suspended. Defendant appeals from the judgment.

The facts, in the light most favorable to the judgment, are as follows. During August 1967, 18-year-old Gene Colborn was working as a service station attendant at a Standard station located at 295 Lewis Road, Camarillo. Defendant operated a truck which made regular stops at the station to sell various food items.

About two weeks prior to his arrest on August 23, 1967, defendant, while making change for Gene after a sale of food, pulled two or three handrolled cigarettes from his pocket along with the coins, and asked if Gene wanted some. Thinking that they might contain marijuana, Gene declined. Following defendant's departure, Gene informed his two employers of the incident, and they notified the sheriff's office. Officers then suggested that Gene try to get some marijuana from defendant.

Several days later defendant asked Gene for the telephone number of a girl who had been at the station. Gene said, "Why should I give you the phone number? You can't do me any good." Defendant responded, " I can get you all the grass or weed you want.' " Gene gave him the phone number and defendant promised to bring some marijuana the follow-

ing day. They did not meet the following day. The next time Gene saw defendant was on August 22, when defendant said that he did not have any marijuana with him but he would bring some on the following day.

Later on August 22, Gene reported this conversation to Detective Leonard Wyatt of the Ventura County sheriff's office, and they planned to meet the following day. On August 23, Detective Wyatt and his partner, Sergeant James Burgess, arrived at the service station about 1:30 p.m. They were in plain clothes and driving an unmarked car. They told Gene they would remain in their car on a parking lot some 250 to 300 feet away, and in the event that he received marijuana from defendant, he was to signal them by turning on the lights of an old truck parked at the station. When defendant arrived Gene asked if he had "any stuff." Defendant then entered the cab of the truck, removed a small Roi-Tan cigar box and withdrew one handrolled cigarette, which he handed to Gene with the statement that this was all he could spare. Gene could see similar cigarettes in the box. After placing the cigarette in his pocket, Gene asked if defendant could obtain some larger quantities for him, a "lid" or a "kilo." Defendant said that it would take a couple of days as he would have to go to Los Angeles. When defendant left the station Gene gave the predetermined signal to the detectives.

The officers drove to the side of the street near the station and Gene handed them the cigarette and told them about the transaction. Sergeant Burgess, an experienced narcotics officer, tore open a small portion of the cigarette and formed the opinion that it contained marijuana. The officers left in pursuit of defendant.

They located him at his next stop and parked some distance away. They then walked to the truck when they saw that he had finished waiting on his customers. As they approached, Sergeant Burgess said, "Sheriff's detectives. Are you Mr. Lopez?" He also exhibited his badge, which contains the words, "Sergeant. Ventura County Sheriff's Department." Defendant responded affirmatively and the officers asked him to accompany them to the other side of the truck. When asked for identification, defendant produced a California driver's license. Through this phase of the proceedings, defendant was cooperative. However, he became nervous when the officers stated that they were from the narcotics detail and asked whether the truck contained any narcotics. When defendant responded that he had none, the officers asked if they might

check the vehicle, since they had information that it contained narcotics. Defendant refused, saying he " 'had a schedule to meet and didn't have time to be fooling around.' " Looking through the window, Sergeant Burgess saw the cigar box described to him by Gene. He then opened the door of the truck, picked up the box, and opened it. Two brown, handrolled cigarettes fell out. Defendant said, " 'Those cigarettes aren't mine. You dirty bastards put them there.' " Two more of the handrolled cigarettes were found in the box.

After replacing the cigarettes in the box, Sergeant Burgess told defendant that he was under arrest for possession of marijuana. Detective Wyatt then instructed defendant to place his hands on the side of the truck. Defendant replied that he wasn't going anywhere with them. He then jumped away and removed the metal coin changer from his belt and held it above his shoulder as though about to throw it. Defendant was again told that he was under arrest and instructed to put the changer down. The changer, which weighed "a couple of pounds," was not put down, but was transferred from the right to the left hand, while defendant reached into his rear pocket. He withdrew a handkerchief and threaded it through the changer. When Detective Wyatt saw defendant reaching for his pocket, he drew his revolver. Defendant said "go ahead and shoot." As the officers approached him defendant lunged at them, swinging the coin changer, which was then suspended from the handkerchief. The officers avoided injury only by dodging the blows. He then made one final lunge at Sergeant Burgess, turned and ran. The sergeant pursued and tackled him. When Detective Wyatt caught up with them, defendant was on top of Burgess, still swinging the coin changer from side to side. Eventually defendant was handcuffed and taken into custody.

### Sufficiency of the Evidence

Laboratory examination confirmed that the handmade cigarettes contained marijuana. There can be no question as to the sufficiency of the evidence to establish guilt on all five counts. Although defendant denied that he had possessed or furnished or promised to furnish any marijuana, and denied he knew that the men he fought with were officers, this conflict in the evidence was conclusively resolved against defendant by the verdict of the jury. (*People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778].)

The attack made on the two officers by swinging the metal

coin changer constituted an assault even though the officers succeeded in dodging the blows. (See *People* v. *Swansboro* (1962) 200 Cal.App.2d 831, 837 [19 Cal.Rptr. 527].) It was a factual question for the jury to determine whether the force used was "likely to produce great bodily injury." (See *People* v. *Hahn* (1956) 147 Cal.App.2d 308, 310-311 [305 P.2d 192].) We cannot say that the inference drawn by the jury was an unreasonable one.

### *Probable Cause to Arrest and Search*

■ Defendant contends that since the only information the officers had about him came from an untested informant, they did not have legal grounds to arrest him, and hence the seizure of the cigar box in the truck was illegal. Defendant relies upon cases in which the informer was known to the police only as a narcotics informant, or a person who was himself involved in the narcotics traffic. (See, e.g., *People* v. *Gallegos* (1964) 62 Cal.2d 176, 179 [41 Cal.Rptr. 590, 397 P.2d 174]; *People* v. *Tovar* (1966) 239 Cal.App.2d 644, 646 [49 Cal.Rptr. 79]; *People* v. *Cedeno* (1963) 218 Cal.App.2d 213, 219 [32 Cal.Rptr. 246].)

There is no precise formula for determining cause to arrest. ■ "To constitute probable cause for arrest, a state of facts must be known to the officer that would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person arrested is guilty ■ . . . Probable cause depends upon the measurement of probabilities [citation], based upon the unique facts of each particular case [citation]." (*People* v. *Hillery* (1967) 65 Cal.2d 795, 803 [56 Cal.Rptr. 280, 423 P.2d 208].)

In cases where a citizen who is not himself involved in crime comes forward with a report of an offense which he has witnessed, the surrounding circumstances sometimes afford sufficient indicia of credibility to justify an arrest even though the informant is previously unknown to the officer. (See, e.g., *People* v. *Griffin* (1967) 250 Cal.App.2d 545, 551 [58 Cal.Rptr. 707]; *People* v. *Lewis* (1966) 240 Cal.App.2d 546 [49 Cal.Rptr. 579].)

■ In the case at bench Gene was a young man who was regularly employed, with no apparent ulterior motive in reporting the defendant's first offer to furnish marijuana. Gene's employers impliedly vouched for his credibility in passing the report along to the police. With no apparent motive other than good citizenship Gene followed the instruc-

tions of the officers to help them catch the offender. He reported his activities faithfully, and eventually turned over a marijuana cigarette which he had obtained under their instructions. Their observations confirmed his contact with the defendant, and their observation of the cigar box on the seat of the truck was further confirmation of Gene's report. Under all of the circumstances the trial court could reasonably conclude that the officers held a strong and reasonable suspicion that defendant had given Gene the cigarette which Gene had turned over to them moments earlier.

Since the officers had probable cause to arrest defendant before picking up the cigar box, it is immaterial that the box was seized before the formal arrest was announced. (*People* v. *Williams* (1967) 67 Cal.2d 226, 229 [60 Cal.Rptr. 472, 430 P.2d 30].)

## Instruction on Good Faith

The trial court instructed the jury that defendant would not be guilty of violating Health and Safety Code section 11532 ''if reasonably and in good faith he believed said minor was of an age in excess of 21 years.'' Defendant contends that the trial court should have gone farther and instructed in effect that he should be found not guilty if the jury had a reasonable doubt whether defendant in good faith believed Gene was older than 21 years.

We reject defendant's contention because we are of the opinion that defendant's claimed ignorance of the age of Gene was not a defense at all under this statute. Several considerations support that conclusion.

*First*: There is nothing in the acts of the Legislature to indicate that Health and Safety Code section 11532 applies only when the offender knows he is dealing with a minor.[1] Under the preceding section 11531 it is a felony to offer or furnish marijuana to anyone; and section 11532 simply provides greater punishment when the offeree is a minor. As a general proposition, it has been said that a mistake of fact

[1]Section 11532 provides that ''Every person of the age of 21 years or over who . . . unlawfully sells, furnishes, administers, gives, or offers to sell, furnish, administer, or give, any marijuana to a minor . . . is guilty of a felony punishable by imprisonment in the state prison from 10 years to life. . . .''

Section 11531 provides: ''Every person who transports, imports into this State, sells, furnishes, administers or gives away, or offers to transport, import into this State, sell, furnish, administer, or give away, or attempts to import into this State or transport any marijuana shall be punished by imprisonment in the state prison from five years to life. . . .''

relating only to the gravity of an offense will not shield a deliberate offender from the full consequences of the wrong actually committed. (See Perkins on Criminal Law (1957) p. 832; Perkins, *Alignment of Sanction with Culpable Conduct* (1964) 49 Iowa L.Rev. 325, 377.)

There is nothing in California Penal Code sections 20 and 26, relating to criminal intent, which will support defendant's theory. Section 20 provides "In every crime or public offense there must exist a union, or joint operation of act and intent, or criminal negligence." In the case at bench the specific intent to furnish a narcotic is the mental state which satisfies the requirement of section 20. (See *People* v. *Brown* (1960) 55 Cal.2d 64, 68 [9 Cal.Rptr. 816, 357 P.2d 1072]; *People* v. *Lopez* (1967) 254 Cal.App.2d 185, 188 [62 Cal.Rptr. 47].)

Penal Code section 26 provides: "All persons are capable of committing crimes except those belonging to the following classes: . . . Four—Persons who committed the act or made the omission charged under an ignorance or mistake of fact, which disproves any criminal intent . . . Six—Persons who committed the act or made the omission charged through misfortune or by accident, when it appears that there was no evil design, intention, or culpable negligence . . ."

Where a person intends to furnish marijuana, his ignorance of the age of his donee is not the kind of ignorance which "disproves any criminal intent" within the meaning of subdivision four, nor is it the kind of accident which negates an evil design, because the act of furnishing is criminal irrespective of the age of the donee.

*Second*: Defendant's reliance upon *People* v. *Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092] is unsupported by either the reasoning or the decision in that case. *Hernandez* holds that in a prosecution for statutory rape, the defendant may defend by showing that he had in good faith a reasonable belief that the prosecutrix was 18 years or more of age.

The rationale of *Hernandez* is reflected in the language taken from an English opinion: " ' "At common law an honest and reasonable belief in the existence of circumstances, which, if true, would make the act for which the person is indicted an innocent act, has always been held to be a good defense. . . ." ' " (61 Cal.2d at p. 535.)

The act there under consideration was legally innocent if the female was 18 years or more of age, but no such statement

can be made with respect to trafficking in marijuana. The *Hernandez* decision, like *People* v. *Vogel* (1956) 46 Cal.2d 798 [299 P.2d 850], the bigamy case which preceded it, speaks only of a defense based upon a reasonable belief that the act done was not criminal.

*Third*: The public takes an extremely grave view of adults who furnish narcotics to minors, and this attitude is reflected in the Legislature's determination that those who deal with minors shall be punished by longer terms than those who deal only with adults. It seems most probable that the Legislature intended that the narcotics dealer be punished for the harm he actually inflicts, even though he intended a less serious offense.

### Prior Convictions

■ Defendant contends that the proof of the prior convictions was insufficient because the record does not show whether defendant had counsel in the prior cases. This argument misconceives the function of appellate review. If defendant had desired to raise that issue, he could have done so in the trial court, where evidence could have been taken to resolve the issue. Since the defendant admitted the priors without questioning their validity, there is nothing to review here. (*People* v. *Merriam* (1967) 66 Cal.2d 390, 396-398 [58 Cal.Rptr. 1, 426 P.2d 161].)

The judgment is affirmed.

Jefferson, J., and Dunn, J., concurred.

A petition for a rehearing was denied May 5, 1969, and appellant's petition for a hearing by the Supreme Court was denied June 11, 1969.