[No. A019864. First Dist., Div. Two. Nov. 20, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
KENNETH PARKER, Defendant and Appellant.

**COUNSEL**

Mary Geissler Lanzone, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and Michael I. Mintz, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**ROUSE, J.**—Defendant Kenneth Parker appeals from a judgment of conviction after a jury found him guilty of first and second degree burglary (Pen. Code, §§ 459, 460).[1] The charges against defendant stemmed from the burglaries of the San Francisco Bay Company building (the Bay Building) and the Mollath Building, both of which are located in Oakland.

Defendant's appeal raises issues that relate only to the burglary of the Bay Building, therefore, we set forth only facts relevant to that offense.

The Bay Building is a three-story warehouse located in Oakland. The ground floor is occupied by a clothing outlet and two other commercial tenants; the mezzanine and second floor are commercial office space; and the third level is leased by Madson Lines, a luggage manufacturing business, and by local artists as a studio. Michael and Susan Madson, the owners of Madson Lines, also reside on the third floor.

At approximately 4:30 a.m. on November 13, 1981, Officer Haney of the Oakland Police Department was dispatched to the Bay Building in response to an activated silent burglar alarm. From his patrol car, Officer Haney saw pry marks around the lock of the front door. He drove to the side of the building and saw a Chevrolet Impala parked near the loading dock. Officer Haney got out of his car and watched defendant and John Williams, a co-defendant, leave the building from the loading dock entrance. Williams was carrying clothing. Officer Haney instructed the men to halt, but they ran back into the building, closing the door behind them, and hid. With the aid of a search dog, Officer Haney located both men. Defendant was hiding in the attic; Williams was close by. Police later found a crowbar and two flashlights on the loading dock. They also found property belonging to Michael Madson, which had been taken from his living quarters, on the front seat and in the trunk of the Impala.

Defendant testified that he and Williams left Sambo's restaurant sometime between 3 and 4 a.m. on November 13, 1981. As Williams and he were driving by the Bay Building, Williams said that he noticed some people running down the street and wanted to "check it out." Williams then drove

---

[1]Unless otherwise specified, all statutory references are to the Penal Code.

them to the Bay Building, parked the car, and went in. Defendant waited in the car and after a while dozed off. Defendant awoke and became concerned about Williams, so he went in to look for him. Defendant testified that prior to his entry, the trunk of the car had not been opened and that Williams had not come out of the building. Defendant also said that he did not leave the ground floor, did not touch anything inside, and did not help Williams carry anything to the car. Defendant said that while he was standing on the loading dock, he saw Williams. Defendant then apparently turned and with Williams behind him they headed out when they heard Officer Haney shout, "Hold it." Defendant then ran back into the building and hid.

### I.*

. . . . . . . . . . . . . . . . . . . . . . . .

### II.

Defendant contends that the trial court erred in refusing to give his proposed instructions to the effect that (1) to convict him for first degree burglary, the prosecution must prove beyond a reasonable doubt that he knew or should have known that the building he entered was an inhabited dwelling house, and (2) that his reasonable but mistaken belief that the building was not an inhabited dwelling house constitutes an affirmative defense.[4]

Defendant's proposed instructions presume that knowledge that a building is a residence is an element of first degree burglary and the lack of such knowledge is an affirmative defense. He points out that, if it makes no difference whether a person knows or reasonably should know that a building is a residence *before* he burglarizes it, then a person who enters with a felonious intent is strictly liable for first degree burglary if the building turns out to be a residence. He claims, however, that "[s]trict liability in criminal matters is allowable only with regulatory offenses enacted for the protection of public health where the primary purpose of the statute is regulation, rather than punishment or correction."

In support of his position, defendant cites *People* v. *Hernandez* (1964) 61 Cal.2d 529 [39 Cal.Rptr. 361, 393 P.2d 673, 8 A.L.R.3d 1092]; *People* v.

---

*See footnote, *ante,* page 818.

[4] At the time of the Bay Building burglary, section 460, subdivision 1, provided, in relevant part: "Every burglary of an inhabited dwelling house . . . or the inhabited portion of any other building committed in the nighttime, is burglary of the first degree." (Stats. 1978, ch. 579, § 23, p. 1985.) For purposes of our discussion we use the term "residence" interchangeably with "inhabited dwelling house" and the "inhabited portion of any other building . . . ."

*Vogel* (1956) 46 Cal.2d 798 [299 P.2d 850]; and *People* v. *Calban* (1976) 65 Cal.App.3d 578 [135 Cal.Rptr. 441].

These cases are distinguishable, hence defendant's reliance on them is misplaced.

In *People* v. *Hernandez, supra,* the California Supreme Court held that an accused's good faith, reasonable belief that a victim was 18 years or more of age was a defense to the charge of statutory rape. (61 Cal.2d 529, 536.)

In *People* v. *Vogel, supra,* the California Supreme Court similarly held that an accused's good faith, reasonable belief that he was free to remarry was a defense to bigamy. (46 Cal.2d 798, 803.)

In *People* v. *Calban, supra,* the Court of Appeal held that where a defendant is charged with making false affidavits concerning a recall petition, in violation of Elections Code section 29218, the prosecution must prove that the defendant had knowledge of the falsity of the affidavits at the time they were made. (65 Cal.App.3d 578, 584-585.)

In these cases, the applicable statutes did not expressly require a specific intent or make knowledge an element of the offense. However, each court noted that under section 20 the commission of a crime requires the union of an act *and wrongful intent,* and that under section 26 a person is incapable of committing a crime where he performed the act in ignorance or under a mistake of fact which disproves any criminal intent or where the act was performed through misfortune or by accident, when it appears that he had no evil design, intention, or culpable negligence. (See *Hernandez, supra,* 61 Cal.2d 529, 534-536; *Vogel, supra,* 46 Cal.2d 798, 801; *Calban, supra,* 65 Cal.App.3d 578, 584.) In each case, had the defendant's mistaken view of the facts been correct, it would have precluded a finding of criminal intent or evil design and the defendant's conduct by itself would have been entirely innocent. Thus, to avoid making the offenses matters of strict liability, the courts, as noted above, held either that knowledge was an element of the offense or that lack of knowledge was defense.

In the context of a prosecution for first degree burglary, however, ignorance concerning the residential nature of a building does not render a defendant's unlawful entry into it with a felonious intent innocent conduct. On the contrary, such conduct is a crime regardless of a defendant's mistaken belief or lack of knowledge concerning the burglarized building. (See § 459.) Such criminal conduct clearly satisfies the requirement of section 20, i.e., that there be a union of act and intent. Moreover, a defendant's ignorance about the building is neither the kind of ignorance that disproves

any criminal intent nor the kind of misfortune or accident which negates an evil design. (See § 26.)

In addition to the inapplicability of defendant's cases, his claim fails for a number of other reasons.

Although sections 459 and 460, subdivision 1, require proof that the defendant entered what in fact was an "inhabited dwelling house" or the "inhabited portion of any other building," the language of these sections does not imply, and we do not infer therefrom, that to commit first degree burglary a defendant must have any particular knowledge about the building before he burglarizes it. (Cf. *People* v. *Guthrie* (1983) 144 Cal.App.3d 832, 843-848 [193 Cal.Rptr. 54] [neither § 459 nor § 460 make knowledge that a "dwelling house" is "inhabited" an element of first degree burglary].)[5]

Section 459 defines the crime, viz., the unlawful entry of any building with a felonious intent. On the other hand, section 460, subdivision 1, prescribes the punishment by providing a greater punishment when the defendant enters a residence. "As a general proposition, it has been said that a mistake of fact relating only to the *gravity* of an offense will not shield a deliberate offender from the full consequences of the wrong actually committed. [Citation.]" (*People* v. *Lopez* (1969) 271 Cal.App.2d 754, 760-761 [77 Cal.Rptr. 59]; italics added.) Thus, where a defendant enters a residence, his ignorance that it was a residence provides no protection from the increased punishment that is imposed for his actual conduct.

The greater punishment for burglary of a residence reflects the Legislature's recognition of "the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence." (*People* v. *Lewis* (1969) 274 Cal.App.2d 912, 920 [79 Cal.Rptr. 650].)

These dangers arise whenever a burglar enters a residence and are not eliminated or even diminished simply because the burglar does not know that he is entering a residence. On the contrary, his surprise at having unexpectedly entered a residence may make the situation more volatile. If

---

[5]In *Guthrie*, the defendant did not claim that he did not know he was entering a "dwelling house"; rather, he claimed that the prosecution had to prove beyond a reasonable doubt that he knew it was "inhabited." (144 Cal.App.3d 832, 843-848.) In dicta, the court stated, "Since the instant case involves a structure in which people are ordinarily present, we have no occasion to examine situations involving structures not likely to provide reasonable warning that people may be living in them." (*Id.*, at p. 848.)

Nothing in this dicta nor the opinion as a whole suggests a result contrary to that which we reach here.

we were to permit the burglar's ignorance to shield him from the punishment for first degree burglary, despite the fact that he has, in fact, burglarized a residence, we would weaken the protection against residential burglary and frustrate the policy behind the enhanced penalty provided by section 460, subdivision 1. Conversely, our rejection of defendant's claim strengthens the deterrent effect of section 460 by putting a potential burglar on notice that he enters any building at his own peril and risks more severe punishment if it turns out to be a residence. (Cf. *People* v. *Olsen* (1984) 36 Cal.3d 638 [205 Cal.Rptr. 492, 685 P.2d 52]; *People* v. *Lopez, supra,* 271 Cal.App.2d 754.)[6]

In light of our discussion, we conclude that in a prosecution for first degree burglary, the fact that a defendant does not know that the building he is about to burglarize is a residence is irrelevant. ■ The trial court did not err in refusing to give defendant's proposed instructions.

The judgment of conviction is affirmed.

Kline, P. J., and Smith, J., concurred.

A petition for a rehearing was denied December 20, 1985.

---

[6]In *Olsen,* the defendant was convicted of lewd and lascivious conduct with a child under 14 years of age. (§ 288, subd. (a).) On appeal, the court rejected the defendant's claim that a good faith, reasonable belief that the child was older than 14 years constituted a defense. In rejecting this claim, the court acknowledged that it had previously recognized a mistake of age defense in *People* v. *Hernandez, supra,* 61 Cal.2d 529. However, it considered such a defense in this context to be inappropriate because of the public policy favoring special protection for this age group and the legislative determination that sexual offenses against this group should be punished more severely than similar offenses against those under 18 years of age. (36 Cal.3d 638, 642-643, 647-649.)

In *Lopez,* the defendant was convicted of offering marijuana to a minor. (Health & Saf. Code, § 11352.) On appeal, the court rejected defendant's claim that a reasonable mistake concerning the age of his offeree was a defense to the charge. One of its grounds for rejecting this claim was that given the public's grave view of adults who furnish narcotics to minors, "[i]t seems most probable that the Legislature intended that the narcotics dealer be punished for the harm he *actually* inflicts, even though he intended a less serious offense." (271 Cal.App.2d 754, 762, italics added.)