Opinion
 

 KITCHING, J.
 

 Introduction
 

 Robbery is classified as either first or second degree. Under current law, all robberies are of the second degree unless otherwise specified by statute. (Pen. Code, § 212.5, subd. (c).) The Legislature has determined that when a victim is robbed while using or immediately after using an automated teller machine (ATM), and the victim is in the vicinity of the ATM, that robbery will be in the first degree. (Pen. Code, § 212.5, subd. (b).)
 

 Appellant Lavan Ervin appeals from the judgment convicting him of a violation of Penal Code sections 211 and 212.5, subdivision (b). The trial court also found Ervin had suffered a prior serious felony conviction within the meaning of Penal Code section 667, subdivisions (a) to (i). Ervin was sentenced to 17 years in state prison.
 

 Ervin contends Penal Code section 212.5, subdivision (b) is unconstitutionally vague and, even if the statute is not unconstitutional, there was insufficient evidence to prove he knew the victim had just used an ATM prior to the robbery. We reject these contentions and affirm the judgment of the trial court.
 

 
 *1327
 
 Facts
 

 Viewed in accordance with the usual rule of appellate review
 
 (People
 
 v.
 
 Ochoa
 
 (1993) 6 Cal.4th 1199, 1206 [26 Cal.Rptr.2d 23, 864 P.2d 103];
 
 People
 
 v.
 
 Thomas
 
 (1992) 2 Cal.4th 489, 514 [7 Cal.Rptr.2d 199, 828 P.2d 101]), the evidence established the following. At approximately 11:30 p.m. on July 15, 1995, Kevin Harmon went to an ATM located at the Great Western Bank on the comer of Sepulveda and Mariposa in El Segundo. When he returned to his car, a person, whom Harmon identified in court as Ervin, approached from the rear and held Harmon’s car door open. Ervin faced Harmon, flipped up the tail of his shirt, which was hanging outside his pants, and displayed the butt of a gun sticking out of his waistband. In response to Ervin’s demand, Harmon handed over his wallet, his car keys and the contents of his glove compartment. The wallet contained less than $10 in cash. Ervin fled northeast, and Harmon, who found his car keys on the ground, drove across the street to a hotel where he told the desk clerk what had happened. The clerk called police.
 

 At approximately 10 minutes to midnight on July 15, 1995, Andrew Usmani, a police officer for the City of El Segundo, observed an older model blue car parked in the parking lot on the east wall of the Great Western Bank at Sepulveda and Mariposa. There was one person in the blue car. Usmani saw Ervin run around the comer of the bank toward the blue car. Ervin ran up to the passenger side and jumped in head first. The car left the parking lot with its headlights off. Usmani immediately followed it and without ever losing sight of the car conducted a traffic stop. Usmani searched Ervin and the vehicle and recovered $6 or $7 in cash, a toy plastic gun, and a roll of black tape. Harmon’s wallet was subsequently found hidden under the dashboard.
 

 Ervin did not present any evidence.
 

 Discussion
 

 1.
 
 Vagueness.
 

 Ervin contends Penal Code section 212.5, subdivision (b), is unconstitutionally vague. We are not persuaded.
 

 Penal Code section 212.5, subdivision (b) provides: “Every robbery of any person while using an automated teller machine or immediately after the person has used an automated teller machine and is in the vicinity of the automated teller machine is robbery of the first degree.” Ervin argues the
 
 *1328
 
 statute is unconstitutionally vague because a person of ordinary intelligence cannot know the precise parameters of the concepts “immediately after” and “in the vicinity,” and thus the statute does not provide fair warning of prohibited conduct and encourages arbitrary enforcement of the law.
 

 “The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of ‘life, liberty, or property without due process of law,’ as assured by both the federal Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7). Under both Constitutions, due process of law in this context requires two elements: a criminal statute must ‘ “be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt.” ’ [Citations.]”
 
 (Williams
 
 v.
 
 Garcetti
 
 (1993) 5 Cal.4th 561, 567 [20 Cal.Rptr.2d 341, 853 P.2d 507].) Several factors are involved: “ ‘ “First ... we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an
 
 ad hoc
 
 and subjective basis, with the attendant dangers of arbitrary and discriminatory application.” ’ [Citations.]”
 
 (Id.
 
 at pp. 567-568.)
 

 “The starting point of our analysis is ‘the strong presumption that legislative enactments “must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute should be sufficiently certain so that a person may know what is prohibited thereby and what may be done without violating its provisions, but it cannot be held void for uncertainty if any reasonable and practical construction can be given to its language.” ’ [Citation.]” (5 Cal.4th at p. 568.) “Many, probably most, statutes are ambiguous in some respects and instances invariably arise under which the application of statutory language may be unclear.”
 
 (Evangelatos
 
 v.
 
 Superior Court
 
 (1988) 44 Cal.3d 1188, 1201 [246 Cal.Rptr. 629, 753 P.2d 585].) However, “to succeed on a facial vagueness challenge to a legislative measure that does not threaten constitutionally protected conduct . . . a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that ‘the law is impermissibly vague
 
 in all of its
 
 applications.’ [Citation.]” (Ib
 
 id.;
 
 see also
 
 People
 
 v.
 
 McKelvey
 
 (1991) 230 Cal.App.3d 399, 403 [281 Cal.Rptr. 359] [“In reviewing a statute challenged for vagueness, courts focus upon defendant’s act rather than hypothetical or conceivable acts falling within the statute.”].) “[A] statute will not be held void for vagueness
 
 *1329
 
 at the behest of a defendant whose conduct falls clearly within its bounds.
 
 (Bowland
 
 v.
 
 Municipal Court
 
 (1976) 18 Cal.3d 479, 492 . . . .)”
 
 (People
 
 v.
 
 Camillo
 
 (1988) 198 Cal.App.3d 981, 996 [244 Cal.Rptr. 286].)
 

 “ ‘The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage, and understanding.’ [Citation.]”
 
 (People
 
 v.
 
 Heilman
 
 (1994) 25 Cal.App.4th 391, 400 [30 Cal.Rptr.2d 422] [“repeatedly” not unconstitutionally vague].) “A dictionary is a proper source to determine the usual and ordinary meaning of a word or phrase in a statute.”
 
 (E.W. Bliss Co.
 
 v.
 
 Superior Court
 
 (1988) 210 Cal.App.3d 1254,1258, fn. 2 [258 Cal.Rptr. 783]; see
 
 Brown
 
 v.
 
 Municipal Court
 
 (1978) 86 Cal.App.3d 357, 365 [150 Cal.Rptr. 216] [dictionary used to define “failure” and “inability” in DUI-related statute].)
 

 The dictionary defines “vicinity” as: the quality or state of being near, proximity; a surrounding area or district; neighborhood. (Webster’s Collegiate Dict. (10th ed. 1995) p. 1316.) The similar phrase “in or about” withstood a vagueness challenge in
 
 People
 
 v.
 
 Superior Court
 
 (Caswell) (1988) 46 Cal.3d 381 [250 Cal.Rptr. 515, 758 P.2d 1046]. In
 
 Caswell,
 
 defendants were charged with loitering “ ‘in or about any toilet open to the public for the purpose of engaging in or soliciting any lewd or lascivious or any unlawful act.’ ”
 
 (Id.
 
 at p. 388.) Our Supreme Court explained the phrase “in or about any toilet open to the public” was not “misleading or cryptic,” and that it “is sufficiently definite such that no reasonable person could misunderstand its meaning.”
 
 (Id.
 
 at p. 391.) The phrase “in the vicinity of an automated teller machine” provides sufficiently definite notice that no reasonable person could misunderstand its meaning. Similarly, the phrase “immediately after” is not unconstitutionally vague. “Immediately,” in the context of time, means “without interval of time, straightway.” (Webster’s Collegiate Dict.,
 
 supra,
 
 at p. 579.) Although Ervin presents a list of questions allegedly unanswered by Penal Code section 212.5, subdivision (b), “[a] statute is not void simply because there may be difficulty in determining whether some marginal or hypothetical act is covered by its language.”
 
 (People
 
 v.
 
 Camillo, supra,
 
 198 Cal.App.3d at p. 996.)
 

 The phrases “in the vicinity” and “immediately after” have common dictionary meanings. Their usual definitions are easily understood. The courts have often approved similar statutory phrases. These statutory terms gave sufficient warning to Ervin that robbing someone who has just used an ATM is first degree robbery.
 

 
 *1330
 
 2.
 
 Sufficient Evidence.
 

 Alternatively, Ervin contends that even if the ATM robbery statute is not unconstitutional, his conviction must be reversed because the prosecution failed to prove that he knew his victim had used an ATM before the robbery. This claim is meritless.
 

 Ervin fails to advance any reasoned argument to support his claim that a violation of Penal Code section 212.5, subdivision (b), depends on the perpetrator’s knowledge that the victim has just used an ATM; he merely asserts it. Ervin complains that to “sentence him to additional time in prison because of a circumstance he did not know existed would not simply be unfair, but a violation of his right to due process of law.”
 

 However, generally a “mistake of fact relating only to the gravity of an offense will not shield a deliberate offender from the full consequences of the wrong actually committed.”
 
 (People
 
 v.
 
 Lopez
 
 (1969) 271 Cal.App.2d 754, 760-761 [77 Cal.Rptr. 59].) Hence, in burglary prosecutions, a defendant’s own beliefs concerning the residential nature of a building have nothing to do with the question of the degree of the burglary.
 
 (People
 
 v.
 
 Hines
 
 (1989) 210 Cal.App.3d 945, 949 [259 Cal.Rptr. 128];
 
 People
 
 v.
 
 Parker
 
 (1985) 175 Cal.App.3d 818, 823 [223 Cal.Rptr. 284]; see also
 
 People
 
 v.
 
 Magpuso
 
 (1994) 23 Cal.App.4th 112, 115-118 [28 Cal.Rptr.2d 206] [mistake of age no defense to aggravated punishment for kidnapping child under 14];
 
 People
 
 v.
 
 Williams
 
 (1991) 233 Cal.App.3d 407, 410-412 [284 Cal.Rptr. 454] [mistake of age no defense to selling controlled substance to minor].)
 

 As the court in
 
 Parker
 
 explained: “Although [Penal Code] sections 459 and 460, subdivision 1, require proof that the defendant entered what in fact was an ‘inhabited dwelling house’ or the ‘inhabited portion of any other building,’ the language of these sections does not imply, and we do not infer therefrom, that to commit first degree burglary a defendant must have any particular knowledge about the building before he burglarizes it. [Citation.] [¶ Section 459 defines the crime, viz., the unlawful entry of any building with a felonious intent. On the other hand, section 460, subdivision 1, prescribes the punishment by providing a greater punishment when the defendant enters a residence. . . . [¶ The greater punishment for burglary of a residence reflects the Legislature’s recognition of ‘the dangers to personal safety created by the usual burglary situation—the danger that the intruder will harm the occupants in attempting to perpetrate the intended crime or to escape and the danger that the occupants will in anger or panic react violently to the invasion, thereby inviting more violence.’ [Citation.] [¶ These dangers arise whenever a burglar enters a residence and are not
 
 *1331
 
 eliminated or even diminished simply because the burglar does not know that he is entering a residence. On the contrary, his surprise at having unexpectedly entered a residence may make the situation more volatile.”
 
 (People
 
 v.
 
 Parker, supra,
 
 175 Cal.App.3d at p. 823, fn. omitted.)
 

 Robbery of an ATM customer is quite similar. Penal Code section 211 defines the crime: the taking of another’s personal property accomplished by means of force or fear. Section 212.5 prescribes a greater punishment for robbing someone who is using an ATM, or someone who has just used an ATM and is still in the vicinity of the machine. The greater punishment is to deter ATM robberies. Thus, if one person intends to rob another, the fact that the victim has just used an ATM relates merely to the gravity of the offense; the statute does not expressly require defendant’s knowledge that the victim has used an ATM, and the robber’s ignorance of the victim’s ATM use does not negate criminal intent.
 

 In any event, even if Penal Code section 212.5, subdivision (b), did require such knowledge, there was sufficient evidence of that knowledge here. Ervin argues “[t]he record gives no indication how or why appellant happened to be there. We learn that Harmon used an ATM and that shortly thereafter appellant appeared, but the State does not offer any evidence to show that appellant knew Harmon had used an ATM. Harmon does not, for example, testify that he noticed a car or a person in the area when he went to use the ATM.” This argument entirely ignores the testimony of Officer Usmani, who did indeed see the getaway car parked alongside a wall of the bank, just around the comer and out of sight of the ATM used by Harmon. As the robbery took place between 11:30 p.m. and midnight, a reasonable inference from Usmani’s testimony is that Ervin and his accomplice were waiting for someone to use the bank’s outside ATM precisely in order to target a victim.
 
 [1]
 

 We hold that the statute does not require a defendant’s knowledge that the victim has just used an ATM. Even if it did require that knowledge, however, contrary to Ervin’s claim, there was sufficient evidence of his knowledge here.
 

 
 *1332
 
 Disposition
 

 The judgment is affirmed.
 

 Klein, P. J., and Croskey, J., concurred.
 

 Appellant’s petition for review by the Supreme Court was denied June 18, 1997.
 

 [1]
 

 Officer Usmani testified the getaway car was parked along the east wall of the bank, just around the comer from and out of sight of the ATM Harmon used, located at the southwest comer of the bank. Moreover, Usmani testified that even though he had not witnessed the actual robbery, he was very cautious after he stopped the getaway car: “I thought it was kind of suspicious how—I knew the location of the readyteller [i.e., the ATM]. Thought it was kind of odd somebody come running out around the comer and dive into a vehicle and then not sit up and the vehicle drive off with no headlights.”