Filed 5/4/26  P. v. Pinedo CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>FERNANDO PINEDO, JR.,<br><br>    Defendant and Appellant. | 2d Crim. No. B340552<br>(Super. Ct. No. 24BFCF00230)<br>(Los Angeles County) |

Fernando Pinedo, Jr., appeals from the judgment after a jury convicted him of elder abuse and assault by means of force likely to produce great bodily injury (Pen. Code,[1] §§ 368, subd. (b)(1), 245, subd. (a)(4); counts 1 and 3).  He was sentenced to four years in state prison.  Pinedo contends the evidence was insufficient to support his convictions.  We affirm.

---

[1] Undesignated statutory references are to the Penal Code.

FACTS AND PROCEDURAL HISTORY

In April 2024, Whittier police officers were dispatched to a location in Santa Fe Springs. While in her vehicle responding to the call, Officer Lidia Corona observed Pinedo in the street and 76-year-old E.V. walking across the same street. Pinedo walked "aggressively" towards E.V. holding a belt in his hand. E.V. moved away from Pinedo as he approached her. When Pinedo and E.V. were a few feet apart, Pinedo swung the belt at E.V.'s head. E.V. ducked to avoid the belt, stepped into the road to get away from Pinedo, and continued walking away from him. Pinedo then fell in the street and was detained and arrested by officers. Pinedo appeared to be drunk at the time of the incident. Video of the incident was captured on a surveillance camera and on Officer Kaitlyn Lara's body camera.

Pinedo was charged with (1) elder abuse under section 368, subdivision (b)(1), and (2) assault by means of force likely to produce great bodily injury under section 245, subdivision (a)(4).[2]

At trial, Cecilia Espinoza (E.V.'s daughter), Officer Corona, and Officer Lara testified. The jury also viewed the two videos depicting the incident. The jury convicted Pinedo of both charges. The trial court sentenced Pinedo to the high term of four years in prison for elder abuse, and imposed and stayed a four-year prison sentence on the assault conviction pursuant to section 654.

DISCUSSION

Pinedo contends the evidence was insufficient to support his convictions. We disagree.

"In evaluating whether the judgment is supported by substantial evidence, we review the entire record in the light

_____

[2] The district attorney dismissed an assault with a deadly weapon charge prior to trial.

most favorable to the judgment, presume in support of the judgment every fact that can reasonably be deduced from the evidence in the record and determine whether any reasonable finder of fact could have found that the prosecution sustained its burden of proof beyond a reasonable doubt.  [Citation.]  We do not reweigh conflicting evidence or reevaluate the credibility of witnesses.  [Citation.]" (*People v. Skiff* (2021) 59 Cal.App.5th 571, 579.)  When reviewing the record for sufficiency of the evidence, we draw all reasonable inferences in support of the judgment.  (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Substantial evidence must be "reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt."  [Citation.]' [Citations.]  'Substantial evidence includes circumstantial evidence and any reasonable inferences drawn from that evidence.' " (*People v. Clark* (2011) 52 Cal.4th 856, 942–943.) " ' " '[T]he judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding.' " ' " (*Id.* at p. 945.)

*The assault charge*

Section 245, subdivision (a)(4) prohibits an assault upon another person "by any means of force likely to produce great bodily injury."  Assault under section 245 is "directed at the force used, and it is immaterial whether the force actually results in any injury.  The focus is on force likely to produce great bodily injury." (*People v. Parrish* (1985) 170 Cal.App.3d 336, 343; see also *People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1065 [while death or great bodily injury must be *likely*, it need not actually occur].)  Assault focuses on the "nature of the act and not on the perpetrator's specific intent." (*People v. Williams* (2001) 26

3

Cal.4th 779, 786.) It is not necessary that the perpetrator have a specific intent to injure the victim, or even a substantial certainty that application of physical force will result. (*Id*. at p. 788.) "Whether the injury is inflicted under circumstances or conditions likely to produce great bodily injury is a question for the trier of fact." (*People v. Clark* (2011) 201 Cal.App.4th 235, 245.)

Here, the prosecutor pursued two theories of assault by means of force likely to produce great bodily injury: the act of Pinedo swinging his belt toward E.V.'s head, and E.V.'s subsequent retreat toward the road, where she could have been injured by a vehicle. While substantial evidence supports Pinedo's conviction on both theories, his conviction will be upheld if there is substantial evidence supporting either theory. (*People v. Smithey* (1999) 20 Cal.4th 936, 972.)

As to Pinedo's act of swinging his belt, the jury viewed a picture of the belt, the actual belt with a hollow metal buckle, and the surveillance video depicting Pinedo swinging the belt toward E.V.'s head. The jury was able to examine the belt and assess what kind of injuries it could have potentially inflicted on E.V. The jury heard audio from Officer Lara's body camera, where another officer stated, "He's attacking the female. He's attacking the female. Let's go." On these facts, the jury could reasonably determine that the belt, had it made contact with E.V., was likely to produce great bodily harm. (See *People v. Lopez* (1969) 271 Cal.App.2d 754, 758–759 [conviction of assault upheld where defendant swung a metal coin changer at police officers, but made no physical contact].) "We cannot say that the inference drawn by the jury was an unreasonable one." (*Id*. at p. 759.)

4

Moreover, the incident occurred on a busy street; Officer Corona testified she was concerned for E.V.'s safety because a vehicle had already come to a complete stop near the incident. E.V., holding two bags in her hands, had to walk quickly to get away from Pinedo. E.V. could have been seriously injured or killed by a vehicle while trying to get away from Pinedo. (Cf. *People v. Russell* (2005) 129 Cal.App.4th 776, 778 ["a defendant who intentionally pushes another person into the path of an oncoming vehicle has used that vehicle as a 'deadly weapon'" under § 245, subd. (a)(1)]; see *People v. Drayton* (2019) 42 Cal.App.5th 612, 618, fn. 2 [analysis for assault with a deadly weapon under § 245, subd. (a)(1) is the same as assault under subd. (a)(4): "i.e., whether the defendant used *force likely to cause great bodily injury*"]; see also *People v. Perez* (2018) 4 Cal.5th 1055, 1065 [collecting cases recognizing a vehicle can be used as a deadly weapon].) The jury could reasonably conclude that, given the location of the incident—on a street in heavy traffic—Pinedo created a situation likely to produce great bodily injury. (*Drayton*, at p. 617 ["A person can be guilty of an aggravated assault despite causing no injury so long as his actions made a serious injury *likely*"].)

Pinedo contends the evidence was insufficient to support his assault conviction because his belt never made contact with E.V. But it is not necessary for Pinedo to have made physical contact with E.V. "One may commit an assault without making actual physical contact with the person of the victim; because [section 245] focuses on *use* of a deadly weapon or instrument or, alternatively, on force *likely* to produce great bodily injury, whether the victim in fact suffers any harm is immaterial. [Citation.]" (*People v. Aguilar* (1997) 16 Cal.4th 1023, 1036, fn.

9.)  And Pinedo does not dispute that his belt could inflict serious injury on E.V.

Pinedo also contends the evidence was insufficient to support that E.V. could have been struck by a vehicle, because the videos of the incident do not show a vehicle in her immediate vicinity.  Because no vehicle "came close to hitting or injuring [E.V.]" and because she was not injured, Pinedo contends there can be no conviction for assault.  "[S]ince the statute focuses on force *likely* to produce harm, [however,] it is immaterial that the force actually resulted in no harm whatever." (*People v. Wingo* (1975) 14 Cal.3d 169, 176.)  It matters not that no vehicle was directly next to E.V. when she moved away from Pinedo; if a vehicle had been closer to her, she could have been seriously injured or killed.  Officer Corona testified there were vehicles in the road, and the jury viewed surveillance video showing a vehicle in the road as E.V. walked away from Pinedo.  Officer Corona activated her lights and sirens to signal to other motorists to avoid the area.  That a police officer observed and alerted other motorists to avoid the area does not lessen the danger posed by Pinedo's conduct.

Finally, Pinedo contends there was no evidence he was aware of the vehicle that stopped near E.V.  But the test is not what Pinedo personally knew or didn't know; it is whether a reasonable person would reasonably believe that frightening someone to such an extent that they are forced to move toward the road, where other cars regularly travel, would "directly and probably" injure them.  (*People v. White* (2015) 241 Cal.App.4th 881, 885.)  Pinedo "did not have to specifically intend to inflict a particular injury to be guilty of assault." (*Ibid.*)  A jury could

reasonably find that Pinedo's actions created the risk of great bodily injury to E.V.

*The elder abuse charge*

Pinedo contends his conviction must be reversed because the evidence was insufficient to show that he (1) acted under circumstances or conditions likely to produce great bodily harm or death; (2) caused E.V. to suffer physical pain or mental suffering, and (3) knew or had reason to know that E.V. was at least 65 years old. (§ 368, subd. (b)(1).) We disagree.

Elder abuse liability applies to a person "who knows or reasonably should know that a person is an elder" and "who, under circumstances or conditions likely to produce great bodily harm or death, willfully causes or permits any elder . . . to suffer, or inflicts thereon unjustifiable physical pain or mental suffering." (§ 368, subd. (b)(1).) An "elder" is someone who is 65 years or older. (*Id*., subd. (g).) Section 368 applies to a "wide range of abusive situations, including . . . active, assaultive conduct," by which a defendant causes an elder to suffer "unjustifiable pain or mental suffering." (*People v. Heitzman* (1994) 9 Cal.4th 189, 197.)

Under the elder abuse statute, the phrase "under circumstances or conditions likely to produce great bodily harm or death" has the same meaning as used in the assault statute. (*People v. Caparrotta* (2024) 103 Cal.App.5th 874, 899.) As with the assault charge, the prosecutor offered two theories of elder abuse: Pinedo swinging his belt at E.V. and her retreat to the road to avoid being hit. Substantial evidence supports both theories. And we conclude that Pinedo's actions were likely to produce great bodily harm or death.

7

We also reject Pinedo's claim of insufficient evidence regarding E.V.'s mental suffering because she did not testify at trial.[3]  Because Pinedo swung his belt toward E.V.'s head, E.V. was forced to duck and retreat away from Pinedo toward the road.  The jury viewed surveillance video of the incident, and could reasonably conclude that E.V. suffered mental suffering due to Pinedo's actions, evidenced by her ducking to avoid injury and walking faster to avoid Pinedo's belt.  This evidence is sufficient to support the jury's reasonable inference that Pinedo caused E.V. to suffer fear, which amounts to mental suffering under the Elder Abuse and Dependent Adult Civil Protection Act. (Welf. & Inst. Code, § 15610.53; see *People v. Racy* (2007) 148 Cal.App.4th 1327, 1335.)

We also conclude substantial evidence supports the jury's finding that Pinedo should have known that E.V. was an "elder," because she is over 65 years old.  E.V.'s daughter testified to her mother's age, 76 years old at the time of the incident.  The jury viewed a picture of E.V. and surveillance video footage of the incident, and heard Officer Lara describe E.V. as "elderly."  The jury therefore had in evidence E.V.'s physical appearance. (*People v. Smith* (1993) 13 Cal.App.4th 1182, 1190.)  Viewing the evidence in a light most favorable to the judgment, the jury could have reasonably concluded that Pinedo should have known E.V. was over 65 years old at the time of the incident.

---

[3] Pinedo also contends the evidence was insufficient to support that E.V. suffered physical pain.  The district attorney, however, did not argue that E.V. suffered any physical pain or injuries.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:



YEGAN, Acting P. J.



CODY, J.


9

Maria A. Davalos, Judge

Superior Court County of Los Angeles

_____

Dan E. Chambers, under appointment by the Court of
Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief
Assistant Attorney General, Susan Sullivan Pithey, Assistant
Attorney General, Zee Rodriguez and Lauren Sanchez, Deputy
Attorneys General, for Plaintiff and Respondent.