Filed 11/7/19

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| THE PEOPLE, | D073877 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCD266418) |
| IRA ALEXANDER STRINGER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Frederick Maguire, Judge. Affirmed in part, reversed in part, and remanded with directions.

Jerome P. Wallingford, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson and Allison V. Acosta, Deputy Attorneys General for Plaintiff and Respondent.

# I

# INTRODUCTION

A jury convicted Ira Alexander Stringer of two counts of aggravated kidnapping to commit extortion or exact money or property from another person (Penal Code, § 209, subd. (a); counts 1 and 2),[1] three counts of aggravated kidnapping to facilitate carjacking (§ 209.5; counts 5, 6, and 15), two counts of simple kidnapping (§ 207, subd. (a); counts 9 and 10), two counts of assault with a firearm (§ 245, subd. (a)(2); counts 11 and 12), one count of child endangerment (§ 273a, subd. (a); count 13), two counts of felony possession of a firearm (§ 29800, subd. (a)(1); counts 14 and 19), and one count of robbery (§ 211; count 18).  Stringer admitted a prior serious felony conviction (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)) and two prior strikes under the three strikes law (§§ 667, subd. (b), 668, 1170.12), and the jury returned true findings on several firearm enhancements.  The trial court sentenced Stringer to an aggregate term of life without the possibility of parole, plus an additional 87 years to life, in state prison.

Stringer appeals, contending we must reverse the judgment as to his convictions for aggravated kidnapping to commit extortion or exact money or property from another person due to an instructional error and insufficient evidence to support the verdicts.  He claims we must reverse the judgment as to his convictions for simple kidnapping because simple kidnapping is a lesser included offense of kidnapping to facilitate carjacking, of which he was also convicted.  He further argues his trial counsel was constitutionally

---

[1]     All further statutory references are to the Penal Code.

ineffective for not requesting a mistake of fact instruction as to the victim's age for the child endangerment charge. Next, he contends we must reverse the judgment in its entirety because the trial court erred in denying as untimely his motion to represent himself in propria persona. Finally, he claims we must vacate the sentence and remand the matter to allow the trial court an opportunity to exercise its recently acquired discretion to strike or dismiss, in the furtherance of justice, the prior serious felony conviction for sentencing purposes. (§§ 667, subd. (a), 1385.)

We conclude the jury instruction for aggravated kidnapping to commit extortion or exact money or property from another person—a modified version of CALCRIM No. 1202—contained a prejudicial legal error permitting the jury to find Stringer guilty of the charged offenses on a legally invalid basis. However, we conclude there was sufficient evidence to support the aggravated kidnapping convictions. Therefore, we reverse the judgment as to the aggravated kidnapping convictions at issue (counts 1 and 2), and remand the matter to allow the People to elect whether to retry Stringer for those counts with proper instructions under a legally valid theory.

Further, the People concede that simple kidnapping is a lesser included offense of kidnapping to facilitate carjacking and agree we must therefore reverse the judgment as to the simple kidnapping convictions (counts 9 and 10). We accept the People's concessions. In all other respects, we affirm the judgment. Because we are reversing the judgment as to the convictions for counts 1–2 and 9–10, the trial court may, during resentencing, decide whether to exercise its newly acquired discretion to strike or dismiss the prior serious felony conviction.

3

## II

## BACKGROUND

For purposes of this section, we state the evidence in the light most favorable to the judgment. (See *People v. Dawkins* (2014) 230 Cal.App.4th 991, 994.) Additional facts will be discussed where relevant in the following section.

## A

On December 23, 2015, Stringer approached an adult baseball coach giving a batting lesson to a 16-year-old student at a baseball cage and pulled out a firearm. He held the coach and the student at gunpoint and directed them to the coach's nearby vehicle. Stringer sat in the backseat and ordered the coach into the driver's seat and the student into the passenger seat. The coach implored Stringer to take their cell phones, their money, and the vehicle, and not to hurt them. Stringer replied, "Well, when this is over I'll get your ID and I'll take the cash." Stringer then threatened he would kill his captives if they did "anything stupid," and ordered the coach to drive.

Stringer instructed the coach to drive east towards a remote area of the county and the coach complied. During the drive, Stringer pulled a hood over his head and put a bandana over the lower half of his face. He appeared frantic, as though he were running away from someone, and told the victims he was affiliated with the Hell's Angels gang, had been in a gun fight, and "just needed to get away." He repeatedly told the victims not to do "anything stupid" or he would kill them. He also asked them for their names and identification cards so he would know where to find them if they "got him in trouble."

Stringer informed the victims he intended to leave them at a friend's house and take their money, their cell phones, and the vehicle. However, as they drove further into the remote region of the county, the coach grew fearful that Stringer intended to kill them. Therefore, he abruptly veered the still-moving vehicle into a mound of dirt, lunged into the backseat, and grabbed Stringer's wrist to try to wrest control of the firearm from him. Stringer fired three shots during the struggle, but none of them struck the vehicle's occupants. The coach eventually pried the firearm away from Stringer.

Two passing vehicles stopped at the scene of the crash, picked up the victims, and drove them to safety. Stringer approached a third vehicle, which was occupied by a 79-year-old driver. Stringer had blood on him and claimed he needed medical assistance. Therefore, the driver permitted him to enter her vehicle. After entering the vehicle, however, Stringer implied he had a firearm, ordered the driver to "get [him] off this hill," and threatened her not to "do anything stupid like the last guy." After driving for some distance, the vehicle reached a busy intersection and the driver escaped to safety by opening her door and rolling out of the vehicle. Stringer took the vehicle, which he later abandoned, and returned to the area where the kidnapping began.

Three days later, Stringer entered a convenience store elsewhere in San Diego County, pointed a shotgun at the store clerk, and demanded gasoline for his vehicle. The clerk authorized and pumped $20 worth of gasoline for Stringer, who drove away without paying. Police arrested Stringer that evening after a high-speed pursuit and standoff.

B

In connection with these incidents, Stringer was charged by amended information with two counts of kidnapping for ransom, reward, or extortion, or to exact money or property from another person (§ 209, subd. (a); counts 1 and 2), two counts of kidnapping to commit robbery (§ 209, subd. (b)(1); counts 3 and 4), three counts of kidnapping to facilitate carjacking (§ 209.5, subd. (a); counts 5, 6, and 15), three counts of carjacking (§ 215, subd. (a); counts 7, 8, and 16), three counts of simple kidnapping (§ 207, subd. (a); counts 9, 10, and 17), two counts of assault with a firearm (§ 245, subd. (a)(2); counts 11 and 12), one count of child endangerment (§ 273a, subd. (a); count 13), two counts of felony possession of a firearm (§ 29800, subd. (a)(1); counts 14 and 19), and one count of robbery (§ 211; count 18).

The amended information alleged Stringer used a firearm in the commission of counts 1–10 and 18 (§ 12022.53, subd. (b)), discharged a firearm in the commission of counts 1–10 (§ 12022.53, subd. (c)), and used a firearm in the commission of counts 11–13 (§ 12022.5, subd. (a)).  It alleged he committed counts 1 and 2 in a manner that exposed the victims (the baseball coach and student) to a substantial likelihood of death (§ 209, subd. (a)), and committed counts 15–17 against a victim (the 79-year-old driver) who was 65 years of age or older (§ 667.9, subd. (b)).  Further, it alleged Stringer was previously convicted of a serious felony (§§ 667, subd. (a)(1), 668, 1192.7, subd. (c)) and two strikes (§§ 667, subd. (b)–(i), 668, 1170.12).

The jury found Stringer guilty of counts 1–2, 5–6, 9–15, and 18–19, found Stringer not guilty of counts 3–4, and did not return verdicts on the remaining counts,

6

which were lesser included offenses. Stringer admitted the truth of the prior convictions and the jury returned true findings on all other enhancement allegations attached to the offenses for which he was found guilty, except the allegations that he discharged a firearm in the commission of counts 1–2, 5–6, and 9–10. The court sentenced Stringer to life in prison without the possibility of parole, plus an additional 87 years to life.

III

DISCUSSION

A

For the charged offenses of aggravated kidnapping in violation of subdivision (a) of section 209 (counts 1 and 2), the trial court instructed the jury with a modified version of CALCRIM No. 1202. Stringer contends the instruction misstated the law governing aggravated kidnapping. For the following reasons, we agree.[2]

Section 209, subdivision (a) describes four types of aggravated kidnapping: (1) for ransom; (2) for reward; (3) to commit extortion; and (4) to exact from another person any money or valuable thing. For the first three types, the kidnap victim may be the same person as the person who is being extorted or from whom the ransom or reward is sought. (*People v. Kozlowski* (2002) 96 Cal.App.4th 853, 870–871 (*Kozlowski*);

---

[2]    The People contend Stringer forfeited his instructional error argument because his trial counsel did not object to the instruction. However, a defendant need not assert an objection when the error affects the defendant's "substantial rights." (§ 1259.) In this regard, " 'the cases equate "substantial rights" with reversible error[.]' " (*People v. Abbaszadeh* (2003) 106 Cal.App.4th 642, 649.) We address Stringer's challenge on the merits to determine whether there was an impairment of his substantial rights. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927.)

*People v. Ibrahim* (1993) 19 Cal.App.4th 1692, 1696–1698 (*Ibrahim*).)  However, for the

fourth type, there must be both a primary victim (the kidnap victim) and a secondary

victim from whom the defendant seeks to exact money or something valuable.

(*Kozlowski*, at pp. 870–871; *Ibrahim*, at pp. 1696–1698.)

Here, the prosecutor prepared and the trial court adopted a modified version of

CALCRIM No. 1202 for counts 1 and 2, which provided in pertinent part as follows:

> "The defendant is charged in Counts 1 and 2 with kidnapping for the purpose of extortion that resulted in exposure to a substantial likelihood of death, in violation of Penal Code section 209(a).

> "To prove that the defendant is guilty of this crime, the People must prove that:

> "1.     The defendant kidnapped, abducted, or seized, confined, or carried away another person;

> "OR

> "2.     The defendant held or detained the other person;

> "AND

> "3.     *The defendant did so to commit extortion or to get money or something valuable;*

> "AND

> "4.     The other person did not consent to being kidnapped, or abducted, seized, confined, or carried away."  (Italics added.)

Stringer claims the error can be found in paragraph 3 of the instruction, delineated

in italics in the excerpt above.  He contends the paragraph presented two theories of

liability—the third type (kidnapping for extortion) and the fourth type (kidnapping to

exact from another person money or a valuable thing).  He argues the portion of the

paragraph pertaining to the fourth type ("to get money or something valuable") omitted

8

necessary language indicating the kidnapping must be perpetrated to exact money or property *from another person*. Therefore, under the instruction, the jury could impermissibly find him guilty if he sought to exact money or property *from the kidnap victims*.

The People dispute that the instruction presented alternative theories by which the jury could find Stringer guilty of aggravated kidnapping. They claim it charged the jury only to decide whether Stringer committed the third type of aggravated kidnapping (for extortion), not the fourth type (to exact from another person any money or valuable thing). They further argue the instruction's reference to "money or something valuable" merely clarified "types of personal property that could be extorted" under an extortion-based theory.

We agree with Stringer's interpretation of the instruction. Under the plain language of the instruction, the jury could have convicted Stringer if he perpetrated the kidnappings "to commit extortion *or* to get money or something valuable." The instruction's "use of the word 'or' . . . indicates an intention to use it disjunctively so as to designate alternative or separate categories." (*White v. County of Sacramento* (1982) 31 Cal.3d 676, 680.) Further, other portions of the instruction already defined the term extortion, undercutting the People's claim that the challenged language explained or clarified extortion for the jury. Finally, the instruction tracked CALCRIM No. 1202, which explicitly differentiates between the four types of aggravated kidnapping under section 209, subdivision (a). The most sensible interpretation of the modified instruction

9

used here is that it, like the pattern instruction on which it was based, set forth alternative types of aggravated kidnapping giving rise to a conviction.[3]

We further conclude the portion of the instruction pertaining to the fourth type of aggravated kidnapping was flawed. As Stringer correctly notes, subdivision (a) of section 209 states an accused may be convicted of the fourth type of aggravated kidnapping only if he or she kidnaps "to exact *from another person* any money or valuable thing." (§ 209, subd. (a), italics added; see *Kozlowski*, *supra*, 96 Cal.App.4th at pp. 870–871; *Ibrahim*, *supra*, 19 Cal.App.4th at pp. 1696–1698.) The instruction used here did not require a secondary victim, leaving open the possibility the jury could have found Stringer guilty of the fourth type of aggravated kidnapping if he kidnapped to exact money or a valuable thing *from the kidnap victim.* This was error.[4]

We now turn to whether the instructional error was prejudicial. Both parties acknowledge, and we agree, there was no instructional error with respect to the third type of aggravated kidnapping (for extortion). Therefore, the instruction with which the jury was charged included two theories of liability, one legally correct and the other legally incorrect. The legally correct theory of liability permitted the jury to find Stringer guilty of aggravated kidnapping to commit extortion, which refers to the taking of property

---

[3]     The relevant portion of CALCRIM No. 1202 modified and adopted here states: "The defendant [kidnapped the victim] (for ransom[,]/ [or] for reward[,]/ [or] to commit extortion[,]/ [or] to get money or something valuable)."

[4]     Because the bracketed portion of paragraph 3 of CALCRIM No. 1202 suffers from the same defect, we urge the Judicial Council of California to consider revising CALCRIM No. 1202 in accordance with the views expressed in this opinion.

through the wrongful use of force or fear *with the victim's consent*. (§ 518; see *People v. Torres* (1995) 33 Cal.App.4th 37, 50 (*Torres*).) The legally incorrect theory of liability permitted the jury to find Stringer guilty of aggravated kidnapping to exact money or something valuable from either the kidnap victims or a secondary victim, *with or without victim consent*. This type of instructional error, where the jury is instructed with one correct theory of guilt and one incorrect theory of guilty, is known as "alternative-theory error." (*People v. Aledamat* (2019) 8 Cal.5th 1, 7, fn. 3 (*Aledamat*).)

Relying on *People v. Guiton* (1993) 4 Cal.4th 1116, Stringer contends we must find the alternative-theory error prejudicial unless there is "a basis in the record to find that the verdict was *actually* based on a valid ground." (*Guiton*, at p. 1129, italics added.) The People, by contrast, urge us to apply the traditional prejudice standard governing errors of state law, under which we must find the error harmless unless it is "reasonably probable" the defendant would have achieved a more favorable result had the error not occurred. (*People v. Watson* (1956) 46 Cal.2d 818, 836.) Both parties are mistaken.

As our Supreme Court recently clarified, we review alternative-theory errors under the *Chapman v. California* (1967) 386 U.S. 18 (*Chapman*) standard governing federal constitutional errors. (*Aledamat*, *supra*, 8 Cal.5th at p. 3; see *People v. Stutelberg* (2018) 29 Cal.App.5th 314, 320–321 [applying *Chapman* standard to alternative-theory error].) Under that standard, we "must reverse the conviction unless, after examining the entire cause, including the evidence, and considering all relevant circumstances, [we] determine[] the error was harmless beyond a reasonable doubt." (*Aledamat*, at p. 13.)

11

"An examination of the actual verdict may be sufficient to demonstrate harmlessness, but it is not necessary."[5] (*Aledamat*, at p. 13.)

Applying the *Chapman* standard to the present case, we cannot conclude the error was harmless beyond a reasonable doubt. Beginning with the verdicts, we note the jury found Stringer guilty of kidnapping during the commission of a carjacking (counts 5 and 6), which requires proof of a completed carjacking. (*People v. Jones* (1999) 75 Cal.App.4th 616, 626.) Carjacking, in turn, refers to the felonious taking of a vehicle in the possession of another "*against his or her will ....*" (§ 215, subd. (a), italics added; see *People v. Hill* (2000) 23 Cal.4th 853, 855 ["Conviction of ... carjacking generally requires proof that the perpetrator committed the criminal act[] against the will of the victim, i.e., without the victim's consent."].) The verdicts for counts 5 and 6 necessarily suggest the jury found that Stringer took property against the will of the victims and therefore may have relied on the legally incorrect theory of guilt to convict Stringer of counts 1 and 2.

The People contend the verdicts compel a contrary conclusion. They argue the jury likely applied the legally correct theory of guilt because it returned verdicts finding Stringer not guilty of kidnapping to commit robbery (counts 3 and 4), an offense requiring the People to prove the accused perpetrated a kidnapping to take property from the victim against his or her will. (§ 209, subd. (b); see *Torres*, *supra*, 33 Cal.App.4th at p. 50 ["in robbery property is taken from another by force or fear 'against his will' while

---

5    The Supreme Court decided *Aledamat* after this appeal was fully briefed, but the parties both submitted supplemental briefs analyzing the case and its application to this appeal.

in extortion property is taken from another by force or fear 'with his consent' "].)  The People claim the jury necessarily would have convicted Stringer of kidnapping to commit robbery if it had believed he kidnapped the victims to take property against their will.

We disagree with the People because the jury may have found Stringer not guilty of counts 3 and 4 for reasons unrelated to the issue of victim consent.  The jury instruction for counts 3 and 4 stated the accused must intend to commit robbery *when he or she begins to move the victim or make the victim move*.  (CALCRIM No. 1203; see *People v. Tribble* (1971) 4 Cal.3d 826, 830–833.)  The instruction for counts 1 and 2, however, contained no analogous provision regarding when a defendant must form the intent to obtain property from the victim.  Further, the trial court received a note from the jury foreperson indicating the jury had a question regarding the effect, if any, if it were to find that Stringer formed an intent to obtain property *after* the kidnapping began.[6]  Based on the foregoing, it is reasonable to conclude the jury may have found Stringer not guilty of counts 3 and 4 because it believed he formed the intent to take money or property *after* the kidnapping began—a finding unrelated to the issue of victim consent.

Certain evidence in the record further suggests the instructional error may have been prejudicial.  The baseball coach, student, and Stringer all testified the coach beseeched Stringer to take their cell phones, their money, and the coach's vehicle.  In other words, he consented to the taking of his property.  However, Stringer did not accept

_____

[6]    The jury foreperson's note asked:  "Does extortion need to be at the beginning of the commission of the crime, or can it come in the middle of the crime[?]"

13

any of the coach's repeated offers. From this evidence, it is conceivable the jury may have found that Stringer perpetrated the kidnappings for a purpose other than taking property with the consent of his victims, i.e., for a reason other than extortion.

Finally, as the People concede in their appellate brief, no evidence was presented suggesting Stringer sought to procure money or property from a victim other than the kidnap victims themselves. Therefore, there is no basis for us to conclude the jury convicted Stringer of the fourth type of aggravated kidnapping (kidnapping to exact from another person any money or valuable thing) under a viable legal theory.

For all these reasons, the instructional error was not harmless beyond a reasonable doubt. Therefore, the judgment must be reversed as to the convictions for counts 1 and 2.

B

As an alternative to the claim of instructional error just discussed, Stringer contends there was insufficient evidence to support the convictions for counts 1 and 2. "Although we have concluded that the [aggravated] kidnapping conviction[s] must be reversed because [they were] presented to the jury on both a legally adequate and a legally inadequate theory, we must nonetheless assess the sufficiency of the evidence to determine whether defendant may again be tried for the [aggravated] kidnapping offense[s]." (*People v. Morgan* (2007) 42 Cal.4th 593, 613 (*Morgan*).)

" 'In reviewing the sufficiency of the evidence, we must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable

14

doubt." ' [Citation.] 'Substantial evidence' is evidence which is ' "reasonable in nature, credible, and of solid value." ' " (*Morgan*, *supra*, 42 Cal.4th at pp. 613–614.)

As previously noted, there was no evidence to support a finding—and the People do not suggest—that Stringer kidnapped the victims to exact money or other property "from another person," which might otherwise support a conviction of aggravated kidnapping. (§ 209, subd. (a).) Instead, the central dispute on appeal is whether there was sufficient evidence to support a finding beyond a reasonable doubt that Stringer kidnapped the victims "to commit extortion." (*Ibid.*) In particular, Stringer claims a rational jury could not have reached such a finding because there was insufficient evidence to prove he sought to take property from the victims with their consent.

As previously discussed, we cannot conclude the instructional error as to the charges of aggravated kidnapping was harmless. As we noted, certain of the jury's verdicts and some evidence in the record suggest the jury may not have found that Stringer committed aggravated kidnapping to commit extortion. Nevertheless, we conclude there was substantial evidence from which a rational jury *could* find Stringer guilty, beyond a reasonable doubt, of aggravated kidnapping to commit extortion.

Both victims testified that Stringer immediately brandished a gun at his victims. However, the evidence indicates that Stringer did not take the unarmed victims' cell phones or money when he brandished the firearm, though he apparently had the means to do so. Further, according to the victims' testimony, Stringer stated several times he did not intend any immediate harm to them. Indeed, they testified that Stringer threatened them with harm only if they did "anything stupid," and claimed "nothing bad" would

15

happen to them otherwise. Further, they testified that certain of Stringer's threats and comments foretold of possible future harm, but not necessarily present harm. For instance, Stringer told the victims he intended to take their identification cards after they arrived at their destination, so he could locate and potentially harm them in the future, if necessary.

From this evidence, a rational jury could conclude that Stringer kidnapped the victims not with an intent to threaten them with immediate harm and procure property from them against their will, but rather to threaten them with future harm and take property from them with their consent. Such evidence is consistent with, and sufficient to support, a finding that Stringer perpetrated the kidnapping to commit extortion. (See *Torres, supra,* 33 Cal.App.4th at pp. 52–53, fn. 7 ["[A] person commits robbery when he threatens immediate harm to the victim whereas he commits extortion when he threatens future harm to the victim."].) Because the evidence was sufficient to support the convictions for aggravated kidnapping to commit extortion, Stringer may again be tried for the offenses. (*People v. Franco* (2009) 180 Cal.App.4th 713, 726.)

C

As noted, the jury convicted Stringer of simple kidnapping (counts 9 and 10) and kidnapping to facilitate carjacking (counts 5 and 6) arising from his conduct with respect to the baseball coach and student. Stringer challenges the simple kidnapping convictions on grounds that simple kidnapping is a lesser included offense of kidnapping to facilitate carjacking. He argues he could not have been convicted of both lesser and greater

16

offenses arising out of the same act or conduct. The People concede these arguments and agree Stringer's simple kidnapping convictions should be reversed.

"When a defendant is found guilty of both a greater and a necessarily lesser included offense arising out of the same act or course of conduct, and the evidence supports the verdict on the greater offense, that conviction is controlling, and the conviction of the lesser offense must be reversed." (*People v. Sanders* (2012) 55 Cal.4th 731, 736.) The parties do not dispute that simple kidnapping is a lesser included offense of kidnapping to facilitate carjacking. (See *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1368 [the elements of simple kidnapping "appear to be included within the elements of kidnapping during a carjacking"].) They also do not dispute that sufficient evidence supported the convictions for the greater offense of kidnapping to facilitate carjacking. Accordingly, we accept the People's concessions and, as all parties agree, conclude the convictions for simple kidnapping (counts 9 and 10) must be reversed.

D

During jury deliberations, the trial court received a note from the jury foreperson asking whether a defendant must know a victim is under the age of 18 years to be found guilty of child endangerment. After consulting with counsel for both parties, the trial court—with no objection from Stringer's counsel—replied as follows: "There is no requirement that the defendant know or reasonably know the age of the person under the age of 18." Subsequently, the jury found Stringer guilty of child endangerment based on his conduct with respect to the 16-year-old kidnap victim (count 13).

17

On appeal, Stringer acknowledges the child endangerment statute, section 273a, subdivision (a), does not require the People to prove the defendant knew the victim was under 18 years of age. However, he argues a defendant accused of child endangerment may assert a mistake of fact defense based on his or her reasonable, but incorrect, belief that the victim was 18 years of age or older at the time of the offense. Stringer contends his trial counsel provided ineffective assistance by not requesting a mistake of fact instruction regarding his allegedly mistaken belief of the victim's age.

Stringer concedes he could find no case involving a child endangerment charge in which a court has sanctioned a mistake of fact defense regarding a victim's age, but argues such a defense was nevertheless available to him under the principles set forth in *People v. Hernandez* (1964) 61 Cal.2d 529 (*Hernandez*). In that case, the defendant was convicted of statutory rape and requested, but was denied, an opportunity to present evidence that he reasonably and in good faith believed the 17-year-old victim was 18 years of age or older.[7] The *Hernandez* court reversed the judgment, concluding that an accused's reasonable and good faith mistake of fact as to the victim's age can eliminate the requisite intent necessary to sustain a statutory rape conviction. (*Hernandez*, at p. 536.)

---

[7] When *Hernandez* was decided, statutory rape was defined in former section 261, subdivision 1, as an act of sexual intercourse accomplished with a female not the wife of the perpetrator where the female was under the age of 18 years. (Stats. 1913, ch. 122, p. 212.)

18

"Defendants have sought, with mixed results, to have courts apply the *Hernandez* rationale to various other criminal statutes which specify a victim's age." (*People v. Magpuso* (1994) 23 Cal.App.4th 112, 115 (*Magpuso*).)  Courts have approved defenses based on an accused's mistaken belief as to a victim's age in cases involving charges of annoying or molesting a child under 18 years of age (*People v. Atchison* (1978) 22 Cal.3d 181, 183), oral copulation with a person under 18 years of age (*People v. Peterson* (1981) 126 Cal.App.3d 396, 397), and inducing a minor to use marijuana and narcotics (*People v. Goldstein* (1982) 130 Cal.App.3d 1024, 1035–1037).  By contrast, they have concluded the defense is unavailable in cases where the charged offenses were offering to furnish marijuana to a minor (*People v. Lopez* (1969) 271 Cal.App.2d 754, 760–762), selling a controlled substance to a minor (*People v. Williams* (1991) 233 Cal.App.3d 407, 410–412), kidnapping a person under 14 years of age (*Magpuso*, at pp. 115–118), and engaging in unlawful sexual intercourse and oral copulation with a person under 16 years of age (*People v. Scott* (2000) 83 Cal.App.4th 784, 797–801 (*Scott*)).

As the *Hernandez* court explained, the availability of a mistake of fact defense as to a victim's age turns on whether the defendant's mistaken belief, "if true, would [have] ma[de] the act for which the person is indicted an *innocent* act ...." (*Hernandez*, *supra*, 61 Cal.2d at p. 535, italics added.)  Stated differently, the defense is available where the defendant's mistaken view of facts, if correct, "would have precluded a finding of criminal intent or evil design and the defendant's conduct by itself would have been entirely innocent." (*People v. Parker* (1985) 175 Cal.App.3d 818, 822.)  On the other hand, where the defendant's ignorance of the victim's age would not disprove criminal

intent and the defendant would still be guilty of a criminal act notwithstanding his or her ignorance of the victim's age, no mistake of fact defense is available. (*Scott*, *supra*, 83 Cal.App.4th at p. 800 [defense not available where, "even if [the victim] had been 16, [defendant] would still be guilty of felony unlawful sexual intercourse"]; *Magpuso*, *supra*, 23 Cal.App.4th at p. 118 [defense not available where defendant "was committing a criminal act, with criminal intent, *regardless* of her belief as to ... age."].)

Applying these principles, we conclude that a mistake of fact defense pertaining to the victim's age was not available to Stringer. Unlike the defendant in *Hernandez*, who would have been innocent of any wrongdoing if the victim had been 18 years of age or older, Stringer *still* would have committed criminal offenses if the victim had been 18 years of age or older. As noted *ante*, the jury in fact convicted Stringer of several other offenses based on the conduct giving rise to the child endangerment charge, including the offenses of aggravated kidnapping of the 16-year-old (count 2), kidnapping the 16-year-old to facilitate carjacking (count 6), carjacking (count 8), simple kidnapping of the 16-year-old (count 10), and assaulting the 16-year-old with a firearm (count 12).[8]

"A defendant claiming ineffective assistance of counsel under the federal or state Constitutions must show both deficient performance under an objective standard of professional reasonableness and prejudice under a test of reasonable probability of a

---

[8]    Our conclusion that a mistake of fact defense was unavailable to Stringer in this case does not stand for the proposition that such a defense is categorically unavailable in all child endangerment cases prosecuted under section 273a, subdivision (a). We do not address this question, the answer to which is unnecessary to resolve the case before us.

different outcome." (*People v. Osband* (1996) 13 Cal.4th 622, 664.) Because Stringer was not entitled to a jury instruction based on his allegedly mistaken belief regarding the victim's age, Stringer has not demonstrated that his trial counsel rendered ineffective performance when it failed to request such an instruction. (*People v. Dennis* (1998) 17 Cal.4th 468, 542; *People v. Pepper* (1996) 41 Cal.App.4th 1029, 1038.)

E

The day the trial was scheduled to begin, Stringer informed the court he desired to represent himself in propria persona under *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*), based on "irreconcilable" disagreements between himself and his trial counsel regarding trial strategies. The court found the *Faretta* request untimely and, after exercising the discretion afforded it under *People v. Windham* (1977) 19 Cal.3d 121 (*Windham*), denied the request. On appeal, Stringer contends the court erred in denying his *Faretta* request.

A criminal defendant possesses a right to be represented by counsel at all critical stages of the prosecution and, under the Sixth Amendment, a right to represent himself or herself. (*Faretta*, *supra*, 422 U.S. at p. 818.) "The right of self-representation is absolute, but only if a request to do so is knowingly and voluntarily made and if asserted a reasonable time before trial begins. Otherwise, requests for self-representation are addressed to the trial court's sound discretion." (*People v. Doolin* (2009) 45 Cal.4th 390, 453.) "[A] trial court may consider the totality of the circumstances in determining whether a defendant's pretrial motion for self-representation is timely." (*People v. Lynch* (2010) 50 Cal.4th 693, 726 (*Lynch*), abrogated on other grounds in *People v. McKinnon*

21

(2011) 52 Cal.4th 610.)  Such circumstances include the time between the motion and the scheduled trial date, whether trial counsel is ready to proceed to trial, the number of witnesses and the reluctance or availability of crucial trial witnesses, the complexity of the case, any ongoing pretrial proceedings, and whether the defendant had earlier opportunities to assert his right of self-representation.  (*Ibid.*)

Applying these standards, we conclude the trial court properly found Stringer's self-representation motion untimely.  Our Supreme Court has "held on numerous occasions that *Faretta* motions made on the eve of trial are untimely," (*Lynch*, *supra*, 50 Cal.4th at p. 722), and, here, Stringer requested to represent himself the same day trial was scheduled to begin.  (*People v. Valdez* (2004) 32 Cal.4th 73, 102 [*Faretta* request untimely when made "moments before jury selection"]; *People v. Horton* (1995) 11 Cal.4th 1068, 1110–1111 [*Faretta* request untimely when made on the date scheduled for trial]; *People v. Frierson* (1991) 53 Cal.3d 730, 740, 742 [*Faretta* request made two days before trial untimely].)  Further, as the trial court noted, trial was scheduled to accommodate the limited availability of one of the kidnap victims (who attended school out-of-state), the case involved complex issues including the effects of methamphetamine on the defendant's ability to form criminal intent, and Stringer did not make a *Faretta*

request at any of the many pretrial proceedings he attended. Based on all these factors, the trial court did not err in finding the request untimely.[9]

Because Stringer's *Faretta* request was untimely, we must next determine whether the trial court abused its discretion in denying the request under the standards set forth in *Windham*. (*People v. Buenrostro* (2018) 6 Cal.5th 367, 427.) Among other factors to be considered by the court in assessing an untimely *Faretta* request "are the quality of counsel's representation of the defendant, the defendant's prior proclivity to substitute counsel, the reasons for the request, the length and stage of the proceedings, and the disruption or delay which might reasonably be expected to follow the granting of such a motion." (*Windham*, *supra*, 19 Cal.3d at p. 128.)

In denying the untimely *Faretta* request, the trial court noted Stringer's trial counsel was "top shelf," provided "very good" representation, and stood as the "only thing" between Stringer and "complete foolishness" in view of his tendency to "go off" and interrupt court proceedings. The court indicated Stringer had previously filed a motion to substitute counsel, which was denied, and had already sought and obtained a

---

9       Stringer suggests the *Faretta* request was untimely due to circumstances outside his control. He contends he originally communicated the *Faretta* request to his trial counsel in the weeks preceding the scheduled trial date, but she determined these communications were privileged and therefore did not communicate the *Faretta* request to the trial court. However, there is no indication in the record that Springer instructed his counsel to waive the attorney-client privilege for the limited purpose of conveying the *Faretta* request to the court and, in any event, Stringer conceded he was not prepared to proceed to trial when he originally communicated the *Faretta* request to his counsel. Under the totality of the circumstances, the alleged communications between Stringer and his trial counsel do not excuse the untimely nature of the *Faretta* request.

23

continuation of the trial date over the People's objection. Further, Stringer conceded he "[a]bsolutely" was not prepared to proceed to trial in propria persona and could not estimate when he would be prepared to proceed to trial.[10] Finally, the court found the disruption and delay associated with the *Faretta* request may prejudice the prosecution's case. In particular, it reasoned that the driver whose vehicle Stringer entered at the scene of the car crash was elderly and her advanced age could render her unavailable to testify at a later trial date. On this record, no abuse of discretion has been established.

F

Pursuant to section 667, subdivision (a), the trial court imposed mandatory 5-year sentencing enhancements for counts 1, 5, and 18 based on Stringer's prior serious felony conviction. After sentencing took place, the Governor signed into law Senate Bill No. 1393, effective January 1, 2019, which granted courts discretion to strike or dismiss prior serious felony convictions for sentencing purposes. (Stats. 2018, ch. 1013, §§ 1–2.) Stringer argues the legislative amendments implemented by Senate Bill No. 1393 apply retroactively to all nonfinal judgments and urges us to remand the matter to permit the trial court to exercise its newly granted discretion to strike or dismiss the prior serious felony conviction at issue. Because we are reversing the judgment as to counts 1–2 and 9–10, and therefore remanding the matter for resentencing, we need not address the

---

10    Stringer handed the court a written motion to continue the trial during the same hearing in which the court considered the *Faretta* request. In the motion, he stated he required a continuance of at least 120 days to "begin anew, the preparation of the defense."

merits of Stringer's argument. During resentencing, the trial court may exercise the discretion granted it by Senate Bill No. 1393. (§ 1385, subds. (a)–(b).) We express no opinion on how the trial court should exercise its discretion and instead reserve the matter for the trial court to decide in the first instance on remand.

IV

DISPOSITION

The judgment is reversed as to the convictions for aggravated kidnapping in violation of section 209, subdivision (a) (counts 1 and 2) and simple kidnapping in violation of section 207, subdivision (a) (counts 9 and 10), and affirmed in all other respects. The matter is remanded to allow the People an opportunity to retry Stringer for violations of section 209, subdivision (a) with proper instructions. Following the People's election and any retrial, the court is directed to resentence Stringer, at which time the court may consider whether to exercise its newly acquired discretion to strike or dismiss the prior serious felony conviction.

McCONNELL, P.J.

WE CONCUR:

BENKE, J.

DATO, J.

25