Filed 5/12/21  P. v. Daniels CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> DAMON DESHELL DANIELS, <br><br> Defendant and Appellant. | D077383 <br><br><br> (Super. Ct. No. SCE392999) |

APPEAL from a judgment of the Superior Court of San Diego County, Lantz Lewis, Judge.  Affirmed.

Alex Coolman, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, A. Natasha Cortina and Kelley Johnson, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Damon Deshell Daniels of one count of vandalism $400 or more (Pen. Code,[1] § 594 subd. (a)(b)(1); count 2).[2] At a separate bench trial, Daniels admitted he had a prior strike conviction (§§ 667, subds. (b)-(i), 1170.12).

The court sentenced Daniels to prison for four years.

Daniels appeals, contending a jury instruction regarding vandalism (CALCRIM No. 2900) was improper, and, in the alternative, section 594 is unconstitutionally vague. We reject these contentions and affirm the judgment.

FACTUAL BACKGROUND

*Prosecution*

Daniels was staying with his girlfriend at her house in El Cajon. J.S. and his wife lived next door.

About 11:45 p.m. on July 18, 2019, J.S. was awoken by loud noises outside his home. He looked out the window and saw Daniels jumping on the hood of J.S.'s car. When J.S. yelled at Daniels to stop, Daniels climbed onto J.S.'s SUV. J.S. called 911.

Daniels then removed a screen from a window of J.S.'s home and kicked the door. He cracked the doorframe and split the wood above the deadbolt lock, causing about $1,200 in damages.

Daniels also caused about $5,000 in damages to J.S.'s cars by jumping and climbing on them.

---

[1] Statutory references are to the Penal Code unless otherwise specified.

[2] During Daniels's jury trial, the court granted defense's motion under section 1118.1 with regard to a charge of first degree burglary (§§ 459, 460, subd. (a); count 1) and acquitted Daniels of that count.

*Defense*

Daniels testified that he had gotten into an argument with his girlfriend and she kicked him out of the house on the night in question.[3] He had used methamphetamine earlier that night and consumed some drinks. However, he said it was possible that somebody had "put something in [his] drink" because he was "feeling weird and stuff." He did not remember jumping on J.S.'s cars or kicking the door of J.S.'s house. He explained that he knocked loudly on J.S.'s door because he needed to use the phone so he could get a ride out of the area. He stated that he did not kick the door.

## DISCUSSION

## I

## JURY INSTRUCTIONS

### A. Daniels's Contentions

Daniels contends that CALCRIM No. 2900 improperly permits the jury to use the commission of any wrongful act that incidentally damages property. The People argue Daniels forfeited this claim by failing to object to CALCRIM No. 2900 at trial. However, Daniels asserts we can address his claim on appeal because his substantial rights were affected. (See § 1259.) Also, Daniels explicitly argues that "CALCRIM No. 2900 misstated the law of vandalism." "Where . . . defendant asserts that an instruction is incorrect in law an objection is not required." (*People v. Capistrano* (2014) 59 Cal.4th 830, 875, fn. 11.) Thus, there was no forfeiture, and we will address the merits of Daniels's contentions.

---

[3] Daniels's testimony from the preliminary hearing was read to the jury.

3

## B. Background

Without objection, the court instructed the jury under the standard form instruction (CALCRIM No. 2900) for vandalism as follows:

> "The defendant is charged in Count 2 with vandalism in violation of Penal Code section 594. To prove the defendant is guilty of this crime the People must prove the following: One, the defendant maliciously damaged or destroyed real or personal property; two, the defendant did not own that property; and, three, the amount of damage caused by the vandalism was more than $400 or more. Someone acts maliciously when he or she intentionally does a wrongful act, or he or she acts with the unlawful intent to annoy or injure someone else. [¶] Voluntary intoxication is not a defense to vandalism of $400 or more as charged in Count 2. A person is voluntarily intoxicated if he or she becomes intoxicated by willingly using any intoxicating drugs, drink, or other substance knowing that it could produce an intoxicating effect, or willingly assuming the risk of that effect."

In his closing argument, the prosecutor focused on the requirement that Daniels "maliciously damaged or destroyed real or personal property." He explained that "[s]omeone acts maliciously when he or she intentionally does a wrongful act."

The prosecutor also discussed the evidence supporting the theory that Daniels committed a wrongful act. He explained:

> "What was the evidence? He was jumping on the Expedition. So you have to ask yourself is jumping on someone else's car on the hood and roof of their car a wrongful act? Yes. Did he intend to do that? Yes. He clearly climbed up on the car, was jumping up and down on the car, he caved the hood in."

The prosecutor further described Daniels's actions:

> "He dented the front of the Ford Fusion, ripped the window off the window sill, stuck his hand through,

4

damaged the blinds, kicked the front door, damaged the frame of the door. I think the damage total was $1,200 for the frame of the door. He's pounding so hard on the front door demanding entry, damaging the frame of the door, he breaks the blinds again causing smudging on the actual wall itself. [¶] So when you look at element one, the defendant maliciously damaged or destroyed real or personal property, yes, obviously. He intentionally did a wrongful act. Breaking other people's things is wrong, everyone knows that, easy, common sense, and he intended to do that."

During her closing argument, Daniels's trial attorney contended that Daniels was "not guilty because he had no malice." She argued that Daniels was "suffering from excited delirium" and not "in a rational state of mind." As such, counsel explained that Daniels did not intend to commit a wrongful act, but was trying to get help. She acknowledged that his belief that he needed help might "have been completely unfounded . . . because of a mixture of perhaps mental illness, perhaps drugs, perhaps drinking, but that was his belief that night, and that matters."

Daniels's counsel compared Daniels's actions with that of a good Samaritan who sees a dog locked inside a car on a hot day and breaks the car window to rescue the dog. She also said that Daniels was not intending to annoy or injure anyone by jumping on the cars or banging on the door to the house. Instead, he took those actions because he needed help.

In rebuttal, the prosecutor reminded the jury that Daniels testified that he did not feel like he was in danger on the night in question. Additionally, he emphasized that vandalism was not a specific intent crime. He explained that the statute merely requires that the prosecution prove that the defendant "intend[ed] to do a wrongful act. Is jumping on the hood of a car a wrongful act? Yes. Did he intend to do it? Yes."

5

## C. Relevant Law and Standard of Review

We review a claim of instructional error de novo. (*People v. Posey* (2004) 32 Cal.4th 193, 218.) "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.) In determining whether error has been committed in giving jury instructions, we consider the instructions as a whole and assume jurors are intelligent persons, capable of understanding and correlating all jury instructions which are given. (*Ibid.*) " 'Instructions should be interpreted, if possible, so as to support the judgment rather than defeat it if they are reasonably susceptible to such interpretation.' " (*Ibid.*) "The crucial assumption underlying our constitutional system of trial by jury is that jurors generally understand and faithfully follow instructions." (*People v. Mickey* (1991) 54 Cal.3d 612, 689, fn. 17.)

## D. Analysis

Daniels maintains that CALCRIM No. 2900 misstates the law on vandalism because it improperly allowed the jury to convict him if he committed any wrongful act that inadvertently damaged property. In other words, he argues that the jury should have been instructed that he could be convicted of vandalism only if he intentionally committed the act of damaging property.

CALCRIM No. 2900 is a standard instruction for the crime of vandalism where the amount of damage exceeds $400. It is based on the statute defining vandalism— section 594. Subdivision (a) of section 594 provides that every person who "maliciously" defaces, damages, or destroys property belonging to another is guilty of vandalism. "[T]he term 'maliciously,' defining the requisite mens rea of the offense, 'import[s] a wish

6

to vex, annoy, or injure another person, or an intent to do a wrongful act, established either by proof or presumption of law.' " (*People v. Campbell* (1994) 23 Cal.App.4th 1488, 1493, citing § 7, subd. 4.)

Ordinarily, the use of the term "malice" or "maliciously" in a penal statute is an expression of general criminal intent. (See *People v. Atkins* (2001) 25 Cal.4th 76, 85-86 [explaining the difference between general and specific intent in the context of the arson statute].) Use of the term "malice" does not transform an offense into a specific intent crime, but the "malice requirement ensures that the act is 'done with a design to do an intentional wrongful act . . . without any legal justification, excuse or claim of right.' " (*Id*. at p. 88.) Requiring evidence the defendant acted with malice ensures the proscribed act was "a deliberate and intentional act, as distinguished from an accidental or unintentional . . . act . . . ." (*Ibid*.)

Although the vandalism statute does require proof the defendant "maliciously" defaced, damaged, or destroyed another person's property, vandalism is a general intent crime and the requisite mens rea can be demonstrated by proof the defendant intended to do the act that caused the resulting harm. In *People v. Kurtenbach* (2012) 204 Cal.App.4th 1264 (*Kurtenbach*), a case acknowledged by Daniels, this court addressed whether a conviction for vandalism could be sustained when a neighboring home suffered damage caused by the defendant's wrongful act of setting fire to his own property, but there was no evidence the defendant intended to damage the neighboring home. The jury was instructed that the "malice" required for vandalism is when the defendant acted by " 'intentionally do[ing] a wrongful act or when he or she act[ed] with the unlawful intent to annoy or injure someone else' " (*id*. at p. 1281), and during deliberations the jury asked (as to the vandalism count) whether the " ' "wrongful act" need to be directed

7

toward property not owned by the defendant?' " (*Ibid.*) The trial court instructed the jury that the wrongful act " 'need not be "directed" toward anyone.' " (*Ibid.*) The defendant asserted that was error, arguing vandalism required the defendant act maliciously toward the victim and therefore the jury should have been instructed the wrongful act needed to be directed toward the victim of the damage. (*Ibid.*) This court rejected the defendant's argument, explaining at page 1282:

> "To commit vandalism a defendant must do an act 'maliciously'. [Citation.] However, as we have stated, a person acts maliciously *either* when acting with 'a wish to vex, annoy, or injure another person' *or* with the 'intent to do a wrongful act.' [Citation.] As our Supreme Court has explained, the first type of malice . . . is known as '[m]alice in fact' and 'consists of actual ill will or intent to injure.' (*In re V.V.* (2011) 51 Cal.4th 1020, 1028.) However, the second type of malice . . . is known as 'malice in law.' (*In re V.V.*, at p. 1028.) 'Malice in law may be "presumed" or "implied" from the intentional doing of the act without justification or excuse or mitigating circumstances.' (*Ibid.*) [¶] Based on the definition of 'malice' contained in section 7, subdivision 4, in making a finding on whether Kurtenbach acted maliciously when damaging the neighbors' house the jury was not limited to the theory of *malice in fact*, and it was thus not required to find that Kurtenbach acted with an intent to do damage to that house. Because of the theory of *malice in law*, the jury could find that Kurtenbach acted maliciously based on his commission of *any wrongful act* that caused damage to the neighbors' house. In this case, Kurtenbach's wrongful act was his participation in the arson of his house. That wrongful act collaterally damaged the neighbors' house, satisfying the definition of vandalism. Because the theory of *malice in law* was applicable to the vandalism count, the trial court was not required, as Kurtenbach claims, to instruct the jury that the wrongful act had to be directed toward causing damage to the neighbors' house. It properly instructed the jury that '[t]he wrongful act need not be "directed" towards anyone.' "

8

We believe the reasoning of *Kurtenbach* is instructive here. To convict a defendant of vandalism, the prosecution must prove the defendant committed a malicious act (either a wrongful act or an act to vex, annoy, or injure another person) that caused damage to property the defendant does not own. (See *Kurtenbach*, *supra*, 204 Cal.App.4th at p. 1282; § 594, subd. (a).) The jury instruction so instructed here.

Nevertheless, Daniels attempts to distinguish *Kurtenbach* arguing that the defendant in that case intended to destroy property, albeit his own, by burning his home. Alternatively stated, Daniels implies that *Kurtenbach* stands for the proposition that vandalism only can be committed where the defendant's action is aimed at destroying property. We do not read *Kurtenbach* so narrowly. Indeed, we made clear that vandalism merely requires that a defendant act maliciously and such an act damages property of another. (See *Kurtenbach*, *supra*, 204 Cal.App.4th at p. 1282.)

Underlying Daniels's argument here is the claim that vandalism is actually a specific intent crime. It is not. (See *People v. Moore* (2018) 19 Cal.App.5th 889, 896.) Further, as we noted in *Moore*, "vandalism is an aggressive act often committed impulsively, and more likely to be committed while intoxicated due to lowered inhibitions." (*Id.* at pp. 895-896.) The record here suggests that was the case for Daniels. He had drunk alcohol and used methamphetamine on the night in question. After being kicked out of his girlfriend's house, he climbed on top of J.S.'s cars and jumped on top of them. He also kicked the door to J.S.'s house. The cars and the door and door frame were damaged in an amount exceeding $400. Voluntary intoxication is not a defense to the crime of vandalism. (*Id.* at p. 896.) Daniels's trial counsel argued that Daniels did not know what he was doing because he was suffering a mental health episode or someone had put a

9

foreign substance in his drink. The jury did not believe defense's theories and convicted Daniels.

In short, the instant action is a very clear case of vandalism. Daniels climbed on two cars owned by J.S. and jumped on them. He also pounded so hard on the door to J.S.'s house that the door and door frame were damaged. The wrongful acts of climbing on the cars and banging on the door are apparent. There is no dispute that the damage that occurred because of Daniels's actions exceeded $400. The jury instruction for vandalism required the jury to find that Daniels maliciously damaged property he did not own. Plainly, he did. There was no instructional error.[4]

DISPOSITION

The judgment is affirmed.

HUFFMAN, J.

WE CONCUR:

BENKE, Acting P. J.

GUERRERO, J.

---

[4] We decline to address Daniels's remaining argument that section 594 is unconstitutionally vague. " '[A] statute will not be held void for vagueness at the behest of a defendant whose conduct falls clearly within its bounds. [Citations.]' " (*People v. Ervin* (1997) 53 Cal.App.4th 1323, 1328-1329.)

10