Filed 6/9/26  Shaw v. City of Los Angeles CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JASON SHAW, | B339462 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23STCP03062) |
| v. | |
| CITY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge.  Affirmed.

Law Offices of Gregory G. Yacoubian and Gregory G. Yacoubian for Plaintiff and Appellant.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Assistant City Attorney, Shaun Dabby Jacobs and Michael Walsh, Deputy City Attorneys, for Defendants and Respondents.

Jason Shaw (appellant) appeals from a trial court judgment denying his verified petition for peremptory writ of mandate and claim for ancillary damages filed following administrative proceedings culminating in termination of Shaw's employment with the Los Angeles Police Department. (LAPD).

We affirm the judgment.

## FACTUAL BACKGROUND

### Appellant's relationship with his former wife

Appellant and his former wife, Elizabeth Shaw,[1] met in 2003. They began a romantic relationship in 2010 and married in 2014. They had one child born in December 2011 and a second child born in February 2014, just after their January 2014 marriage. Appellant and Elizabeth separated in 2021 and commenced divorce proceedings.

Elizabeth suffers from a mental health disorder and was diagnosed by the Veterans Administration (VA) as having posttraumatic stress disorder (PTSD). She receives $4,000 per month from the VA for her disability.

When appellant and Elizabeth began their romantic relationship, appellant was married to Katie Archuleta. Elizabeth was unaware they were still married. Elizabeth e-mailed Archuleta on September 2, 2014, to apologize for breaking up her family, adding she and appellant planned to divorce, and she would move out. Elizabeth expressed hope that Archuleta would adopt her two children and treat them as her own. Elizabeth testified that when she wrote the e-mail,

---

[1] Because appellant and Elizabeth Shaw share the same last name, we refer to Elizabeth Shaw by her first name to avoid confusion. No disrespect is intended.

appellant was mentally abusing her but had not yet started to physically abuse her.

**Family law proceedings**

On September 3, 2021, Elizabeth filed a petition for dissolution against appellant, and on September 9, 2021, she filed a request for custody of their children and spousal support. At that time she made no allegations of domestic abuse.

On October 5, 2021, the Murrieta Police Department (MPD) was informed by Child Protective Services (CPS) of a referral received from Elizabeth's therapist. Elizabeth had told the therapist appellant threatened their daughter when she walked in front of the television while appellant was watching *Monday Night Football*. Elizabeth claimed appellant told their daughter if she did not move, he was going to "get his gun and blow her head off." Elizabeth did not believe the threat was credible but told her therapist it was the last straw in her decision to divorce appellant.

When MPD interviewed Elizabeth, she told the officers there had been unreported incidents of domestic violence since she and appellant had married. The last incident occurred two or three months earlier. Appellant would hold her down for a few seconds and yell at her. She never suffered any serious injuries requiring medical attention or lasting overnight. Elizabeth informed MPD appellant was an alcoholic and was taking steroids.

After investigating the allegations of abuse, MPD declined to file criminal charges due to lack of sufficient evidence. MPD did report the incident to LAPD, where it came to the attention of Lieutenant James Canales on October 7, 2021. Due to the allegation of steroid use, Lieutenant Canales ordered appellant to

3

provide a urine sample to LAPD's medical services division, which appellant did on October 19, 2021.

MPD obtained a one-week emergency protective order (EPO) for Elizabeth on October 6, 2021. Appellant was required to move out of the family home immediately and stay at least 100 yards away from Elizabeth. When MPD advised appellant of the EPO, appellant told them Elizabeth had filed false police reports against her previous husband.

LAPD served the EPO on appellant at work on October 7, 2021. The same day, appellant surrendered all his firearms to MPD and removed his personal property from the family home.

On October 12, 2021, Elizabeth filed a request for domestic violence restraining order and request for child custody. On November 2, 2021, appellant appeared in court to contest the restraining order that had been imposed. With Elizabeth's consent, the court dismissed the complaint she had filed and dissolved the "Temporary Restraining Order as to Domestic Violence with Children."

On December 13, 2021, appellant submitted to a forensic substance evaluation for the purposes of the family law proceeding. After interviewing appellant, his mother, his sister, a family friend and two neighbors, as well as administering two alcohol and drug assessment tests, it was determined appellant had no substance use disorder.

On February 15, 2022, the family law court issued an order limiting appellant's active parenting to 24 hours per week.

On May 16, 2022, Elizabeth filed an ex parte request to amend appellant's parenting time, alleging child abuse. The court ordered CPS to investigate Elizabeth's claim that appellant was physically and emotionally abusing their children.

4

On October 26, 2022, Elizabeth filed another request for order alleging child abuse, seeking sole legal and physical custody, and seeking to limit appellant's visitation to 24 hours per week, professionally supervised at appellant's expense. She also asked the court to order appellant to pay child support and spousal support, including arrears and sanctions, and filed a *Pitchess* motion, requesting an order compelling LAPD to disclose appellant's employment records.[2]

On March 15, 2023, the court allowed appellant to have unsupervised child visitation. The court required appellant to "enroll in Soberlink" and give notice to the city attorney regarding the *Pitchess* motion.

**LAPD Internal Affairs Division (IAD) investigation**

On May 23, 2022, Elizabeth was interviewed by LAPD IAD investigator Sergeant Mark Wright. She informed Sergeant Wright that appellant told her he had started taking steroids in 2016 or 2017.

Elizabeth said appellant had committed acts of domestic violence against her two to three times per month during the first year of their relationship, then it slowed to once every six months. In the most recent year, the domestic violence had increased to once per month. Approximately 85 percent of the time, the incidents occurred when appellant had been drinking. Elizabeth reported some incidents of domestic violence to MPD but had not reported all incidents in the past because appellant told her he would lose his job if his employer found out and they would have no money to survive.

---

[2]     *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

The last incident occurred two or three months prior to Elizabeth's report to MPD. She and appellant had been drinking and arguing and later fell asleep. In bed, appellant got up on his hands and knees and urinated on Elizabeth. She "smacked" him to wake him up. He laughed, got up, and urinated on a dresser.

Though Elizabeth had photographs of prior injuries inflicted by appellant, she had deleted them. She had an eight-minute recording she made on September 17, 2019, in which appellant admitted grabbing her face and pulling her hair.

On July 29, 2022, 10 months after the October 2021 urinalysis test ordered by Lieutenant Canales, the laboratory reported the presence of a steroid in appellant's urine known as boldenone.[3] On the same date, appellant signed a release allowing the laboratory results to be released to IAD Sergeant Wright.

**Charges and Board of Rights (Board) hearing**

On August 18, 2022, IAD completed its investigation. On October 6, 2022, LAPD charged appellant with misconduct, as follows:

"**Count 1**: On or before September 17, 2019, you, while off duty, pulled [Elizabeth's] hair and grabbed her face during a domestic altercation.

"**Count 2**: Between January 1, 2016, and October 7, 2021, on one or more occasions, you, while on or off duty, improperly used anabolic steroids."

---

[3] Boldenone is illegal for human use. We reject appellant's suggestion made for the first time in his reply brief that boldenone is not an illegal steroid. His own expert testified otherwise.

6

Appellant received a *Skelly* package containing a letter of transmittal with the investigation report and attachments.[4]

The Board hearing began on May 22, 2023. Appellant pleaded not guilty to both charges.

Sergeant Wright testified that after he prepared his investigation report, when Elizabeth learned she would testify at the hearing, for the first time she provided several photographs and screenshots of her text messages with appellant. She also provided the audio recording in which appellant admitted to grabbing her face and pulling her hair.[5] She had not reported the incident to MPD.

Photographs provided by Elizabeth showed vials, syringes, and other medications that appellant kept either in the refrigerator or in a box in his closet. The vials were labeled "Boldenone" and "Equipoise." Elizabeth testified that around the beginning of 2017, appellant told her he had been using steroids for six months. He told her he wanted to look younger and wanted to be stronger so he could "take down the 'meth heads' he encountered in his work 'because they were strong when they were on meth.'" Elizabeth provided a photograph which she described as "a box of steroids, the alcohol prep pads, extra needles." Elizabeth testified appellant would receive these boxes every six months. Appellant instructed Elizabeth to pay for the boxes with her Venmo account. Elizabeth provided screenshots of Venmo payments and text messages discussing specific

---

[4]     *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 (*Skelly*).

[5]     During the investigation, appellant's attorney had objected to use of the audio recording since it had been recorded surreptitiously. LAPD acknowledged appellant had been unaware he was being recorded.

payments.  Elizabeth also provided screen shots of text messages between appellant and her in which appellant referenced "man juice" and "steroids."

Elizabeth testified she was physically, verbally, emotionally, and mentally abused during her marriage to appellant.  He would grab her and force her to do things she did not want to do.  He would also constantly "put her down."  Elizabeth testified to the incident during which appellant urinated on her in bed.  She said there were about 10 incidents of physical abuse.

On September 17, 2019, Elizabeth recorded appellant admitting to pulling her hair and grabbing her face.  She made the audio recording while they were riding in appellant's truck having an argument about what happened the night before.  In the audio recording, appellant denied that it was abuse or that he was hurting her.  Appellant said, "Yea, I pulled your hair.  Yea.  I pulled it.  I grabbed your face like that because I want you to look at me.  That's not abuse.  That's not hurting you.  Is it?  You won't look at me.  That's disrespectful.  When I ask you to look at me, then you look at me."

Elizabeth had not reported the incident to police because appellant told her he would lose his job.  She had also previously requested the court dissolve a restraining order because she had been told appellant would never be able to work again with a restraining order against him.

Appellant testified he worked for LAPD for 19 years.  He denied any domestic altercations during his relationship with Elizabeth.  He denied pulling her hair or grabbing her face, saying he gently touched her face so she would look at him, and she slapped his hand away.  He admitted pulling her hair in the

8

audio because he was frustrated by their conversation about possible divorce and was being sarcastic.

Appellant testified he did not know why his urine tests showed up positive for boldenone. He denied taking it or knowing what it was before the investigation. He denied ever having it in the house. He denied knowledge of the needles, alcohol prep pads, and other items shown in the photographs. Appellant testified he had a prescription for testosterone cypionate, which he took by injection and was prescribed by a board-certified practitioner.

Brianna Peterson, a forensic toxicologist at NMS Laboratories, testified appellant's urine tested positive for boldenone. Boldenone is a steroid that was legally used in animals for weight gain and illegally used by humans to build muscle mass. Boldenone is an illegal steroid and not for human consumption. Peterson testified the tests provided by the laboratory were sufficient to show accurate results.

Appellant's expert, Marvin Pietruszka, a board-certified pathologist and forensic toxicologist, stated boldenone is now illegal for human as well as animal use. In his opinion, the test used by NMS Laboratories did not reveal whether the boldenone in appellant's system was exogenous or endogenous.[6] There is a test, not used by NMS Laboratories, that would determine whether the substance originated from within the body or outside of the body. The test NMS used was valid as a screening test, but not as a confirmatory test. Dr. Pietruszka admitted he did not test the urine sample, and he was unfamiliar with boldenone.

---

[6] According to Pietruszka, "there is some endogenous, meaning 'within the body itself,' production of … a drug similar chemically to Boldenone."

Carla Hogan lived with appellant's father for 14 years but they never married. In August 2021, Elizabeth told her she had retained divorce counsel and planned to tell the attorney appellant was abusive. Hogan told Elizabeth that was a lie, but Elizabeth told her "they" will take her side because she is a woman and her lying could not be proven. Elizabeth never told Hogan she had been abused or had her hair pulled. Hogan said Elizabeth told her she had been diagnosed with a mental health disorder, and some of it was PTSD from being in the service. Elizabeth told her it would be a good thing if appellant lost his job and that she hoped appellant would get killed in an accident. Elizabeth told Hogan about the audio recording and said she was baiting appellant.

In the penalty phase, the officer in charge of the civil litigation section for the risk management/legal affairs division of the LAPD, Lieutenant Gomez, testified the charges against appellant constituted "serious misconduct." The first charge of domestic violence violated the LAPD code of conduct, code of ethics, and created a bias concern for the LAPD whenever appellant responded to a domestic violence call. In addition, appellant could be placed on a *Brady* list, which would undermine testimony appellant might provide in future cases.[7] An officer having a history of domestic violence injures the public's perception of the LAPD, as well as the internal perception of other officers knowing that the LAPD tolerates such conduct.

As to the second charge of improper drug use, Lieutenant Gomez testified the public should be confident that when an

---

[7]     *Brady v. Maryland* (1963) 373 U.S. 83.

10

officer responds to a call for service, the responding officer is not using drugs or is a drug user. Steroid use alters behavior, and LAPD may be exposed to litigation if appellant were involved in a use of force or use of excessive force incident regarding the public or a coworker.

**The Board's decision**

On May 25, 2023, the Board found appellant guilty of both counts of misconduct.

As to count one, the Board noted it focused on the audio recording of the conversation that took place on September 17, 2019. Although appellant said he merely turned Elizabeth's face towards his and his hand got tangled in her hair, appellant's "tone of voice and word choices were demonstrably abusive." The Board found Elizabeth's testimony on count one credible.

Regarding count two, the Board noted LAPD presented test results showing the presence of boldenone, an illegal anabolic steroid, in appellant's urine sample. Peterson testified as to the accuracy of the test. While Dr. Pietruszka's testimony might have been sufficient to create doubt in a criminal proceeding, the standard was preponderance of the evidence. Other factors suggested appellant injected boldenone, including Dr. Pietruszka's admitted unfamiliarity with boldenone, appellant's references to steroids in text messages with Elizabeth, and Elizabeth's photographs of boldenone vials. The Board noted Elizabeth's photographs of the boldenone vials were taken before the LAPD's receipt of the laboratory results showing boldenone in appellant's urine.

LAPD's penalty guide had only one recommended penalty for illegal steroid use, which was termination. For a first-time domestic violence count, the penalty guide had several

11

recommendations, including termination. The Board considered appellant's employment record, which included 38 minor commendations and a disciplinary history including one admonishment, one official reprimand, and two suspensions of seven and 10 days, respectively. The Board recommended LAPD Chief Michel Moore terminate appellant's employment.

**Termination**

On May 31, 2023, Chief Moore adopted the Board's recommendation and removed appellant from his position as a police officer, retroactive to November 4, 2022.

# PROCEDURAL HISTORY

Appellant filed his initial petition for peremptory writ of mandate pursuant to Code of Civil Procedure section 1094.5 against the City of Los Angeles and Moore (collectively, city) on August 23, 2023. Appellant argued (1) the city violated appellant's right to due process by using evidence the city did not provide (text messages and photographs) until after scheduling his Board hearing; (2) the Board improperly admitted into evidence the audio recording, because the recording had been made surreptitiously; and (3) insufficient evidence supported the guilty verdict on count two.

The city opposed the petition, arguing (1) the city was permitted to rely on the photographs and text messages under *Skelly, supra,* 15 Cal.3d 194; (2) the audio recording was admissible under the Board manual and state law; and (3) the weight of the evidence supported the Board's finding on count two. Appellant replied, arguing the law relied upon by the city was inapplicable, the court should reject the city's argument as to

12

the late-provided evidence, and the guilty finding on count two was based on a flawed analysis.

The trial court heard oral argument on April 18, 2024. After considering the administrative record, the moving papers, and argument of counsel, the trial court denied appellant's petition.

The court provided a 19-page written decision. As to the photographs and text messages, the court noted due process entitles public employees certain procedural safeguards, including notice of the proposed action, a statement of the reasons therefor, and "a copy of the charges and materials upon which the action is based." (Underscoring omitted and citing *Skelly, supra*, 15 Cal.3d at pp. 215–216.) Because the LAPD did not withhold the text messages and photographs and provided them to appellant as soon as they were provided by Elizabeth, appellant's due process rights were not violated.

As to the audio recording, the court cited Penal Code section 633.5, which allows a party to a confidential communication to record that communication for the purpose of obtaining evidence reasonably believed to relate to the commission of domestic violence.

Finally, the court noted the weight of the evidence supported the Board's finding on count two. The test conducted by NMS Laboratories reported the presence of boldenone. There was also testimony from Elizabeth that appellant told her at the beginning of 2017 he had been using steroids for about six months. Screenshots of text messages between appellant and Elizabeth referenced appellant's use of steroids. Photographs showed vials, syringes, and other medications, including a vial labeled "Boldenone." Elizabeth testified packages containing

13

these drugs arrived every six months.  There was evidence of Venmo payments made for the steroids.  Further, the court noted, Elizabeth would not have known about the positive urine test for boldenone at the time she took the photograph of the vial of boldenone.

The trial court judgment was filed on April 29, 2024.

On June 20, 2024, appellant filed his notice of appeal.

## DISCUSSION

### I.    Applicable law and standards of review

"Section 1094.5 of the Code of Civil Procedure provides the basic framework by which an aggrieved party to an administrative proceeding may seek judicial review of any final order or decision rendered by a state or local agency." (*Bixby v. Pierno* (1971) 4 Cal.3d 130, 137, fn. omitted.)  If the decision of the administrative agency affects an individual's right to practice a trade or profession, "the trial court not only examines the administrative record for errors of law but also exercises its independent judgment upon the evidence disclosed in a limited trial de novo." (*Id.* at p. 143.)  However, in applying its independent judgment, the trial court "must accord a '"strong presumption of … correctness"' to administrative findings, and that the 'burden rests' upon the complaining party to show that the administrative '"decision is contrary to the weight of the evidence."'" (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817 (*Fukuda*).)

"Even when, as here, the trial court is required to review an administrative decision under the independent judgment standard of review, the standard of review on appeal of the trial court's determination is the substantial evidence test." (*Fukuda,*

14

*supra*, 20 Cal.4th at p. 824.) "Applying the substantial evidence test on appeal, we may not reweigh the evidence, but consider that evidence in the light most favorable to the trial court, indulging in every reasonable inference in favor of the trial court's findings and resolving all conflicts in its favor." (*Breslin v. City and County of San Francisco* (2007) 146 Cal.App.4th 1064, 1078.) "We must uphold the court's findings unless they are so lacking in evidentiary support as to render them unreasonable." (*Lozano v. City of Los Angeles* (2022) 73 Cal.App.5th 711, 723.) On questions of law, we apply a de novo standard of review. (*Ibid.*)

## II.    Count two

Appellant's first argument is that the administrative decision is invalid because the Board failed to make a required finding on a necessary element of the charged misconduct.

Count two alleged as follows: "Between January 1, 2016 and October 7, 2021, on one or more occasions, you, while on or off duty, improperly used anabolic steroids."

Count two was based on the LAPD policy, which states:

"Drug abuse is the wrong or improper use of chemical substances.  It includes the use of any illegal drug or controlled substance, along with the misuse of other chemical substances such as alcohol, anabolic steroids, and prescription or over-the-counter medications."

The LAPD policy does not define "misuse."[8]  Appellant points out "anabolic steroids" are grouped with "other chemical

---

[8]    We decline to find LAPD's drug abuse policy unconstitutionally vague due to the LAPD's failure to define the terms "misuse," and "wrong and improper."  This argument is raised for the first time in appellant's reply brief, and we need

15

substances," as distinguished from "illegal drug[s] or controlled substance[s]." Thus, appellant argues, per LAPD's policy, LAPD was required to prove more than just use of anabolic steroids. Instead, LAPD was required to prove "misuse."

Appellant asserts the LAPD failed to prove, and the Board failed to find, the key element of "misuse" or that appellant "improperly used" the substance, as required. Appellant argues the lack of such a finding renders judicial review impossible and deprives the employee of a meaningful opportunity to challenge the decision.[9]

We disagree with appellant's characterization of the record. Count two charged: "Between January 1, 2016, and October 7, 2021, on one or more occasions, you, while on or off duty, *improperly* used anabolic steroids." (Italics added.) The Board found appellant guilty of this count, as charged. Thus, the

---

not address it for that reason. (*Prince v. United Nat. Ins. Co.* (2006) 142 Cal.App.4th 233, 238.) Further, ""The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage, and understanding."" (*People v. Ervin* (1997) 53 Cal.App.4th 1323, 1329.) The terms appellant complains of are commonly used and understood.

[9] Appellant argues he may properly raise this purely legal issue for the first time on appeal. (Citing *Ramirez v. Department of Motor Vehicles* (2023) 88 Cal.App.5th 1313; *Sweeney v. California Regional Water Quality Control Bd.* (2021) 61 Cal.App.5th 1093.) While we disagree with appellant's characterization of this issue as purely legal, the city does not challenge appellant's ability to raise the argument, therefore it is addressed.

Board's decision necessarily included a finding that appellant improperly used anabolic steroids.

The LAPD policy bans the "wrong or improper use of chemical substances." Such "wrong or improper use" includes two things: (1) "the use of any illegal drug or controlled substance," and (2) "the misuse of other chemical substances such as alcohol, anabolic steroids, and prescription or over-the-counter medications."

The Board's finding that appellant improperly used boldenone necessarily includes a finding that appellant either (1) used an illegal drug or controlled substance or (2) misused another chemical substance, such as anabolic steroids. Thus, we decline to find that the Board failed to make a finding on a necessary element of the charge.

Substantial evidence supports the Board's determination that appellant improperly used boldenone, because the evidence shows appellant engaged in both activities that can constitute "wrong or improper use." He used an illegal substance, and he also misused an anabolic steroid.

Appellant's own expert admitted boldenone is illegal for human use. Thus, *any* use of the drug violated the LAPD policy. As stated in the policy, "Drug abuse is the wrong or improper use of chemical substances. It includes the use of any illegal drug or controlled substance …." Because boldenone is an illegal drug, the LAPD policy banned all use of boldenone. The evidence, including the urine test, Elizabeth's testimony, and the photographic evidence, supported the Board's conclusion that appellant used this illegal drug, thus he was guilty of violating the LAPD policy.

17

The evidence also showed appellant misused boldenone. Despite boldenone being illegal for human use, there was evidence appellant began injecting it into his body in 2016 or 2017. Elizabeth testified appellant told her he started using the drug in 2016 or 2017. Elizabeth also provided photographs showing vials labeled "Boldenone" as well as syringes. Elizabeth testified boxes of the drug would arrive every six months and provided evidence of payments for the drug. She provided screen shots of text messages in which appellant referenced "man juice," which Elizabeth believed meant steroids. This evidence supports a finding that appellant was injecting boldenone on a regular basis, which constitutes misuse of the drug, as it is not legal for humans to inject it.

As the trial court noted, the weight of the evidence supports the Board's finding that appellant was guilty of improper use of boldenone as charged in count two.[10]

## III. Admission of evidence

Appellant argues the trial court erred by failing to exclude evidence that was illegally obtained or produced in an untimely manner. We discuss each claim separately below and conclude the trial court did not err in considering the challenged evidence.

---

[10] For the first time in his reply brief, appellant argues there was no evidence appellant used boldenone on the dates alleged in count two, which accused appellant of use between January 1, 2016, and October 7, 2021. Appellant argues for the first time the urine sample provided on October 19, 2021, did not provide evidence of drug use between the dates alleged. Because appellant failed to raise this argument below, we find it is forfeited and decline to address it. (*Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania* (2007) 148 Cal.App.4th 1296, 1309.)

18

## A.   *The audio recording*

Appellant argues it was a violation of due process for a government employer to consider evidence obtained in violation of Penal Code section 632 in an administrative disciplinary hearing.[11]  Section 632 provides that evidence obtained through the surreptitious recording of a confidential communication is generally inadmissible in any judicial, administrative, legislative, or other proceeding.  (See also *In re L.J.* (2023) 89 Cal.App.5th 741.)

The Board indicated it paid particular attention to an audio recording when finding appellant guilty on count one.  The recording was surreptitiously made by Elizabeth during a private conversation between them in which appellant admitted to pulling her hair and grabbing her face.  Appellant argues the recording was obtained in violation of section 632.

However, as the trial court noted, section 633.5 provides an exception to section 632.  Specifically, section 633.5 provides that section 632 does not apply if the recording was surreptitiously made "for the purpose of obtaining evidence reasonably believed to relate to the commission … of the crime of … domestic violence as defined in Section 13700."  The trial court specifically found that Elizabeth "recorded [appellant] to capture his admission about his domestic abuse."  Thus, the exception found in section 633.5 applies.

Appellant argues the alleged conduct does not rise to the level of a felony or a crime of violence that would justify the use of such evidence under section 633.5.  He argues the alleged

---

[11]    All further undesignated statutory references are to the Penal Code.

19

incident involved no serious bodily harm or criminal prosecution. Appellant argues the absence of such felony-level conduct undermines the justification for the use of the recording in the administrative proceedings. Appellant fails to cite any law limiting the application of section 633.5 to incidents of serious bodily harm or criminal prosecution. Thus, these factors do not affect the admissibility of the audio recording. It was not error for the trial court to consider the recording.

The Board properly considered the audio recording for other reasons. First, appellant's attorney did not object to the audio recording being admitted as evidence at the Board hearing. When LAPD offered the audio recording as evidence, appellant's attorney stated: "There's no objection to it being admitted, there is an issue, a hearsay issue, but I have no objection to the admission." Because appellant did not object to the admission of the audio recording into evidence at the Board hearing, he forfeited any admissibility argument. (*Cassidy v. California Bd. of Accountancy* (2013) 220 Cal.App.4th 620, 629, fn. 5.)

Further, the rules of evidence do not strictly apply in administrative hearings. As set forth in Government Code section 11513, subdivision (c), "The hearing need not be conducted according to technical rules relating to evidence and witnesses …. Any relevant evidence shall be admitted if it is the sort of evidence on which responsible persons are accustomed to rely in the conduct of serious affairs, regardless of the existence of any common law or statutory rule which might make improper the admission of the evidence over objection in civil actions." However, hearsay evidence "over timely objection shall not be sufficient in itself to support a finding unless it would be

20

admissible over objection in civil actions." (Gov. Code, § 11513, subd. (d).)

At the hearing, appellant's counsel properly objected that the Board could not rely solely on the recording to find appellant guilty. While the Board noted it paid particular attention to the recording, the record shows the Board did not rely exclusively on the recording in rendering its decision as the Board also noted it found Elizabeth's testimony credible, and the evidence as a whole showed appellant engaged in a pattern of abusive conduct.

For these reasons, the trial court did not err in considering the audio recording Elizabeth surreptitiously made on September 17, 2019.

### B. *Photos, text messages, and expert report*

Appellant next argues the trial court erred by failing to exclude evidence not produced prior to the LAPD's initiation of discipline against appellant. Appellant cites *Skelly, supra*, 15 Cal.3d 194, and *Cleveland Board of Education v. Loudermill* (1985) 470 U.S. 532, in support of his position. However, neither case requires that all evidence be provided to the employee prior to the initiation of discipline. (See *Skelly, supra*, at p. 215 ["preremoval safeguards must include notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond"]; *Cleveland Board. of Education, supra*, at p. 546 ["The … public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. [Citations.] To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee."].)

Appellant complains LAPD failed to produce photographs and text messages provided by Elizabeth prior to the administrative hearing. However, the record reveals otherwise. First, at the time appellant was charged with misconduct, the LAPD provided appellant with a *Skelly* package, including a "Letter of Transmittal" along with the investigation report and attachments. Sometime later, when the matter was already set for hearing before the Board, Elizabeth provided LAPD with the additional evidence, including photos and text messages showing appellant's improper steroid use. This evidence was provided to appellant prior to the administrative hearing. Appellant objected to the use of these materials at the Board hearing on the ground they were not provided as part of the original *Skelly* package. The Board overruled his objection.

While a public employee is entitled to disclosure of the evidence supporting the disciplinary grounds (see, e.g., *Burrell v. City of Los Angeles* (1989) 209 Cal.App.3d 568, 577), there is no requirement that a public employee be provided with every document available that supports the charges. (*Gilbert v. City of Sunnyvale* (2005) 130 Cal.App.4th 1264, 1280 ["We reject appellant's contention that the word 'materials' as used in *Skelly* means each and every document identified in the Chief's Case was required to be produced prior to his pretermination hearing in order to satisfy due process."].) "Constitutional principles of due process do not create general rights of discovery." (*Ibid.*) Instead, what is required is "'unambiguous warning that matters have come to a head, coupled with an explicit notice to the employee that he or she now has the opportunity to engage the issue and present the reasons opposing such a disposition.'" (*Ibid.*) There is no indication in the case law that the employer

may not later provide additional materials following the initial *Skelly* disclosure.

Appellant was provided with the photographs and text messages prior to the hearing before the Board. Appellant did not request any additional time to review the evidence, nor did the evidence alter the fundamental charges against him. Under the circumstances, appellant's objection to this evidence is not well taken.

Appellant also points out he objected at the Board hearing to the LAPD's failure to produce an expert report regarding the testing the LAPD's expert had done. Appellant's attorney stated, "Not only did I not get a report, I didn't even get an indicator or summary of what her testimony might be, so I had [to] attempt cross-examination in the blind on the fly. [That's] called 'Trial by Ambush.'"

However, early in the proceedings, appellant's attorney was informed LAPD was not required to provide an expert report. Appellant's attorney agreed, stating, "I never said [LAPD] was required to give me a written report from her. I do recognize the Board of Rights maintains they are not under the strict rules of discovery …." Because there was no requirement the LAPD provide an expert report, there was no error.

Appellant objected to Peterson's testimony because he could not adequately prepare for cross-examination until he heard her opinions in testimony. The Board overruled appellant's objection but specifically asked Peterson if she could be available to return should appellant's attorney need her for further cross-examination. After Peterson completed her testimony, appellant's attorney stated he had no further questions and

specified he did not need further re-cross-examination. Peterson was told she need not "worr[y] about reappearing."

Thus, there is no indication appellant was prejudiced by LAPD's failure to provide an expert report. Appellant's attorney was given the opportunity to have Peterson return for further cross-examination at a later date and expressly declined the offer. No error occurred.

## IV. Penalty

Lastly, appellant argues even if no due process violation occurred, the penalty of termination was an abuse of discretion where LAPD failed to establish a nexus between appellant's off-duty anabolic steroid use and his on-duty job performance. Appellant cites *Lybarger v. City of Los Angeles* (1985) 40 Cal.3d 822, 834–835, for the proposition that "the basis for the discharge must be rationally related to qualifications for the job." Additionally, "There must be a sufficient 'nexus' between the asserted grounds for dismissal and the fitness to carry out the responsibilities of employment." (*Id.* at p. 835.) As set forth in *Deegan v. City of Mountain View* (1999) 72 Cal.App.4th 37, 50, "the essential test is whether the conduct harms the public service." Appellant argues the absence of individualized findings or evidence showing how appellant's conduct harmed public service or impaired his fitness for duty makes the punishment constitutionally excessive.

In evaluating the penalty imposed on a public employee by a public agency, the trial court must defer to the agency's discretion. "The propriety of a penalty imposed by an administrative agency is a matter vested in the discretion of the agency, and its decision may not be disturbed unless there has been a manifest abuse of discretion." (*Lake v. Civil Service*

24

*Comm.* (1975) 47 Cal.App.3d 224, 228; see also *Deegan v. City of Mountain View, supra,* 72 Cal.App.4th at p. 45 ["Neither the trial court nor the appellate court is entitled to substitute its discretion for that of the administrative agency concerning the degree of punishment imposed."].)

Preliminarily, the city argues appellant forfeited this issue by failing to raise it below. (*Transcontinental Ins. Co. v. Insurance Co. of the State of Pennsylvania, supra,* 148 Cal.App.4th at p. 1309.) Appellant fails to address this argument. Therefore, we consider the argument forfeited.

Even if it were not forfeited, we would not find the agency abused its discretion in recommending the penalty of termination. Given that appellant was found to have engaged in use of an illegal drug, his penalty was consistent with the LAPD penalty guide. The only recommended penalty for illegal drug use is termination. The conclusion that appellant also physically abused his wife further supported this recommendation.[12] Appellant provides no legal authority permitting a court to find an abuse of discretion at the penalty phase when the Board followed the agency's penalty guide.

Further, Lieutenant Gomez testified to the seriousness of the charges against appellant and the reasons LAPD could not tolerate such conduct. LAPD's policy was to maintain a workplace free from any drug use or drug abuse, including steroids. The domestic violence charge also violated LAPD code of conduct and code of ethics. Tolerating the conduct involved in either charge would expose the city to litigation and liability

---

[12] For a first-time sustained domestic violence count, the penalty guide has several recommendations, including termination.

25

because "it could appear [LAPD] ignored the behaviors and … allowed it and accepted it as an organization."  Lieutenant Gomez explained there is no acceptable position in the LAPD for a person with a failed drug test or domestic violence finding against him, therefore termination was appropriate.

Appellant has failed to meet his burden on appeal of showing the Board abused its discretion by following the penalty guide.

## DISPOSITION

The judgment is affirmed.  Respondents are awarded their costs of appeal.

CHAVEZ, Acting P. J.

We concur:

RICHARDSON, J.

GOORVITCH, J.